MAE DUREN, Plaintiff, *v.* CITY OF BINGHAMTON, Defendant.

Supreme Court, Trial and Special Term, Broome County, July 13, 1939.

*Roy C. McHenry* [*Robert O. Brink* of counsel], for the plaintiff.

*Herman F. Nehlsen, Corporation Counsel,* for the defendant.

McNAUGHT, J. The motion for a nonsuit and dismissal of the complaint, so far as the same is based upon the contention that plaintiff failed to prove facts sufficient to constitute a cause of action or that the plaintiff was guilty of contributory negligence as a matter of law, is without merit. The evidence was ample to submit the question of negligence and contributory negligence to the jury.

The question involved on the reserved motion and now presented for determination is one of law, whether the defendant city is to be relieved from liability for its negligence through its employees because the acts in which they were engaged were incident to the exercise of a governmental function.

Although abolished in many particulars by statutory enactment, the ancient and medieval rule that the sovereign can do no wrong still persists where the exercise of governmental powers and functions by a municipal corporation is involved. The doctrine of non-

liability of municipal corporations, even in the exercise of governmental functions, has been seriously questioned and condemned. It has been criticized in unsparing terms by eminent jurists and distinguished legal authorities. The United States Supreme Court has said: " We must not be understood as conceding the correctness of the doctrine by which a municipal corporation, as to the discharge of its administrative duties, is treated as having two distinct capacities, the one private or corporate, and the other governmental or sovereign, in which latter it may inflict a direct and positive wrong upon the person or property of a citizen without power in the courts to afford redress for such wrong." (*Workman* v. *City of New York*, 179 U. S. 552, 574.)

The present tendency is against the rule of non-liability. (*Augustine* v. *Town of Brant*, 249 N. Y. 198, 204, 205.)

The activities of municipal corporations and the functions such corporations exercise embrace two general classes, one governmental and a branch of the general administration of government, the other quasi-private or corporate. In the exercise of the former it is well established by authority that cannot now be questioned that the municipal corporation is exempt from liability for the acts of its officers or agents, while in the latter, when exercising private or corporate functions, it is liable. (*Maximilian* v. *Mayor*, 62 N. Y. 160; *Lefrois* v. *County of Monroe*, 162 id. 563, 567; *Wilcox* v. *City of Rochester*, 190 id. 137, 141, 142; *Augustine* v. *Town of Brant*, supra.)

Where a municipality acts in a proprietary capacity liability attaches for negligence, and the standard of care is the same as that exacted from the proprietor of a private business. (*Oakes Mfg. Co.* v. *City of New York*, 206 N. Y. 221, 227, 228; *Layer* v. *City of Buffalo*, 274 id. 135.)

Where the municipality acts in a proprietary or private capacity it may not invoke the doctrine of sovereign immunity. (*Willcox* v. *County of Erie*, 252 App. Div. 20; affd., 277 N. Y. 604.)

The modern tendency to abolish the fiction that the sovereign can do no wrong is illustrated not only by the comments of eminent jurists and the discussions of learned expositors of the law, but is reflected in statutory enactments. The State has waived its immunity from liability for the torts of its officers and employees. (Court of Claims Act, § 12-a.) State and town liability for defective streets and highways has been extended. (Highway Law, §§ 58, 215, 216.) Counties have been made liable for injuries caused by defective highways and bridges. (County Law, § 6.) Municipalities have been made liable for negligence of an officer or employee in the operation of a municipally-owned motor vehicle. (Gen.

Mun. Law, §§ 50-a, 50-b, 50-c.) Liability for malpractice by physicians and dentists in public institutions has been imposed on municipalities. (Gen. Mun. Law, § 50-d.)

The motion to dismiss upon the ground the defendant city was exercising a governmental function seems to be based upon the fact that in the operation of the post office building annex, leased and operated by the city and county, the city was engaged in the distribution of charitable relief. It is contended the city, being engaged in welfare work, was exercising a function of government, it being its duty to care for the distress of those unable to care for themselves. It is claimed the city was thus acting in a purely governmental capacity and, therefore, is exempt from liability for the negligent acts of its servants or agents, no matter how gross, in connection with the operation of such activities.

The question of liability or non-liability because of the exercise of a governmental function due to the relationship of the various governmental entities entering into the distribution of relief under the conditions existing in the building at the time of the accident, is not at all free from doubt. We do not, however, deem it essential in the determination of this motion to decide such question. It may even be conceded that in the distribution of relief in whatever form the city exercises a governmental function, but that fact, in view of the facts in this case, of itself will not relieve the defendant city of responsibility. If the defendant in its relation to the W. P. A. sewing project was acting in the exercise of private or proprietary functions, the doctrine the sovereign may with impunity so act or fail to act as to injure the individual and be without liability, would not avail to relieve it of responsibility in this case.

It is necessary, therefore, that we turn to a determination as to the capacity in which the city was here acting in relation to the W. P. A. sewing project. The city had leased the post office building and the annex, jointly it is true, with the county, but that we do not consider of importance here. It was a tenant in possession. It granted certain rights and privileges to the W. P. A. sewing project, an enterprise over which it had no control and whose employees were paid weekly wages by an entirely separate and distinct entity. It put up a partition so that the W. P. A. sewing project might have the use, for its purposes and for the activities of its employees, of one-half of the annex. It constructed a door in such partition and then granted the right to use toilet, lavatory and drinking-water facilities in the part it retained for its own use and purposes. To all intents and purposes it was a subleasing. In so doing the defendant was clearly acting in a proprietary capacity. It stood to all intents and purposes in the relation of landlord

to the sewing project and its employees. What was the duty of the defendant city, standing in such relation of landlord? It had granted a right of ingress and egress along a passageway between products and supplies which its employees stacked and stored. It retained under its control that part of the building where its enterprise was being conducted and to which it had granted common use of certain facilities with its tenant on the other side of the partition. It was the duty of the defendant to use reasonable diligence to see that the parts of the premises so retained, and which the employees of the sewing project were entitled to use, were kept in a reasonably safe condition. If it failed to perform such duty it became liable for injuries received by a person on account of the unsafe condition, providing the person injured was not guilty of contributory negligence.

The defendant city was the occupant and in control of that portion of the premises which it had granted the right to use as a passageway to the employees of the W. P. A. sewing project. It was bound to use ordinary care to keep those premises in a safe condition for the access of persons going thereon by invitation, express or implied. (*Totten* v. *Phipps*, 52 N. Y. 354; *Loucks* v. *Dolan*, 211 id. 237; *Jameson* v. *Keystone Warehouse Co.*, 210 App. Div. 212; *Fish* v. *Estate of McCarthy, Inc.*, 224 id. 160, 163.)

The evidence was ample to justify the conclusion that the passageway was not kept in a safe condition; that the negligence of the employees and agents of the city in connection with the storage and piling of products on the sides of the passageway resulted in the accident in which the plaintiff sustained serious injuries and permanent disability.

We conclude that the city was clearly and unquestionably acting in connection with the passageway in question in a proprietary capacity; that it was not then exercising a governmental function, and liability followed as a result of its negligence. The motion for a nonsuit and dismissal of the complaint is denied.

The defendant moves to set aside the verdict, upon all the grounds specified in section 549 of the Civil Practice Act, and particularly upon the ground that the damages are excessive.

The evidence was ample to support the verdict of the jury in favor of the plaintiff.

The sole question on this motion worthy of consideration is, were the damages awarded by the jury excessive? The verdict was for a very substantial sum. There is no suggestion or proof that the jury was in any manner actuated in fixing the amount by passion or prejudice. The testimony as to the injuries sustained by the plaintiff was undisputed. Shortly after the accident the plaintiff

developed a paralysis in her right leg, and a foot drop. She has failed to improve under treatment. The attending physician and a specialist called into the case by the attending physician both testified that the plaintiff has sustained a permanent injury to her spinal cord and right knee, as a result of which she will be permanently disabled. The plaintiff does not have normal control of her kidneys or bladder; her sleep has been affected; she suffers from indigestion. There was testimony to the effect that she is unable to cohabit with her husband as his wife. Her right leg is partially paralyzed; the motion of her knee joint is limited. She is compelled to use crutches, and the medical testimony standing undisputed is that such injuries are permanent. The plaintiff is a married woman, thirty-seven years of age, with an expectancy of thirty and thirty-five one-hundredths years. The verdict of $25,000 is not so excessive as to shock the conscience of the court.

We are unable to discover anything in the record of the trial justifying the conclusion the jury was in any manner actuated by bias or prejudice.

The function of the court in determining whether a verdict should stand after the facts have been passed upon by a jury is so clearly understood and has been established for so many generations that discussion or citation of authority is superfluous.

The exercise of a sound discretion by the trial court is not to be curtailed. " But unless it is apparent that there has been injustice, and there is some compelling reason for substituting the judgment of the presiding judge for that of the jury on plain questions of fact, the trial justice should not be zealous to set aside a verdict because he might have arrived at a different conclusion on the same evidence. (*Leversee* v. *Neidermyer*, 219 App. Div. 214, 216.)

Substantial verdicts even in excess of that rendered in this case have been examined and affirmed where injuries were even less severe. (*Morris* v. *International R. Co.*, 174 App. Div. 61; *Straker* v. *Erie R. R. Co.*, 206 id. 338; *Ward* v. *Iroquois Gas Corp.*, 233 id. 127; affd., 258 N. Y. 124.)

The care with which the discretionary power to set aside the verdict of a jury should be exercised, and where plain questions of fact are involved, the duty of the trial justice to refrain from exercising the power because he might have arrived at a different conclusion, has been frequently discussed. (*Dashnau* v. *City of Oswego*, 204 App. Div. 189; *McNally* v. *Oakwood*, 210 id. 612; *Hogan* v. *Franken*, 221 id. 164; *Timlin* v. *Schepps*, 244 id. 804; *Faver* v. *City of New York*, 248 id. 600; *Coleman* v. *Brooklyn & Queens Transit Corp.*, 252 id. 215, 216.)

The injuries of the plaintiff and their permanency were undisputed. The jury heard the plaintiff's testimony; they saw her appearance; they observed her condition; they heard the testimony of the attending physician and the specialist called by him to examine the plaintiff. They had the opportunity and benefit of the facts elicited by the cross-examination by counsel for defendant. Finding liability on the part of the defendant, it was their province, their duty, and their function to fix and assess the damages.

We find no justifiable reason which would warrant this court in interfering with the verdict of the jury.

The motion of the defendant to set aside the verdict is denied.