MAE DUREN, Respondent, *v.* CITY OF BINGHAMTON, NEW YORK, Appellant.*

Third Department, March 6, 1940.

*Affg. 172 Misc. 580.

*Herman F. Nehlsen, Corporation Counsel [Samuel W. Bernstein with him on the brief], for the appellant.*

*Roy C. McHenry [Robert O. Brink with him on the brief], for the respondent.*

HILL, P. J. The duty of a municipality to care for its poor and indigent arises from statutory enactments, as there is no common-law requirement. (*People ex rel. Town of Blenheim* v. *Supervisors of Schoharie County*, 121 N. Y. 345.) There is no immunity under the doctrine of governmental functions unless the negligence arises in connection with the discharge of a governmental function directed and required by a statute of the State of New York. (*O'Brien* v. *Town of Greenburgh*, 239 App. Div. 555; *Gillen* v. *Home Owners' Loan Corporation*, 255 id. 631; affd., 280 N. Y. 755.)

The wages were paid by the United States government to the W. P. A. project workers. The rent, heat, light and materials were furnished by the city of Binghamton, which received the manufactured products. These were distributed by the welfare department of the city. There is no statute of the State which requires the city to participate in this manufacturing venture. The United States government offered to pay the wages from funds which it had raised by taxation, or had borrowed, to persons who would manufacture garments or necessary household articles. The city of Binghamton was not under a mandate to accept the offer of the Federal government. The items which were manufactured could have been purchased if the city welfare department determined they were needed. The injury to plaintiff resulted from the sewing project. The city and county had leased a building, each municipality paying one-half of the rental. The city constructed a partition and arranged a passageway to the lavatories and toilets. It was the duty of the city to keep this passage in a reasonably safe condition for the use of the workers. The evidence clearly establishes the city's failure in this regard. The moneys paid to plaintiff by the Federal government were wages and not a dole. (*Matter of Liebowitz* v. *Goldwater*, 161 Misc. 115; *Dibner* v. *Cousminer*, 157 id. 229.) Her standing was not different from that of any employee, and the landlord owed to her the same obligation of care.

The city's liability arose for failure to keep the common passage in a reasonably safe condition. The unsafe condition resulted from the careless manner in which a city or county employee stacked barrels of powdered milk adjacent to the passageway. The powdered milk was furnished by the United States government, it acting in a proprietary capacity. Edibles were purchased by

the government, some were sold, some were designated " surplus' goods." Prior to the time that the surplus goods were delivered to the needy, they were stored in this building. Some were used by the city and some by the county. The city could accept the gift of these surplus goods or not, as it determined wise. There is no statutory requirement or direction in this regard. The stacking and storing of these items to be used in common by the city and the county was not a governmental function.

The judgment and order should be affirmed.

CRAPSER, J., concurs; HEFFERNAN, J., concurs, in a memorandum; BLISS, J., dissents, in an opinion, in which FOSTER, J., concurs.

HEFFERNAN. J. The proof in this case amply sustains the finding of the jury that the defendant was negligent and that plaintiff sustained her injuries without fault on her part.

The only other ground on which defendant seeks to escape liability is that at the time it was engaged in the performance of a governmental function. Whether a particular power should be classed as corporate or civil has resulted in a considerable diversity of opinion. The reported cases disclose that the great difficulty which courts have experienced on this subject has been in ascertaining clearly and accurately the line of demarcation between public or governmental duties and private or corporate duties.

The exemption of · municipal corporations from liability for acts done in the exercise of governmental powers should be strictly construed. There can be no doubt that the doctrine of non-liability is opposed to enlightened legal opinion. (*Workman* v. *New York City, Mayor, etc.*, 179 U. S. 552; *Augustine* v. *Town of Brant*, 249 N. Y. 198; *Matter of Evans* v. *Berry*, 262 id. 61; *Sheehan* v. *North Country Community Hospital*, 273 id. 163.)

Defendant stresses the fact that when plaintiff was injured it was engaged in caring for its destitute inhabitants and in the distribution of public relief and that consequently it is exempt from responsibility for its tort.

We concede that the conduct of public charities and the relief of the indigent unquestionably are of such a nature as to carry immunity from liability for the acts or omissions of those through whom such duties are performed. That argument is not available to defendant. The record before us clearly indicates that at the time in question defendant was not performing a duty imposed upon it as the agent of the State in the exercise of a strictly governmental function but was acting in an administrative, ministerial or proprietary capacity and hence it is liable.

The judgment and order appealed from should be affirmed, with costs.

Bliss, J. (dissenting). The respondent has recovered a judgment for personal injuries arising out of the negligence of the appellant's employees. The director of procurement of the Treasury Department of the United States leased to the city of Binghamton and county of Broome through their respective commissioners of welfare, the old post office annex at Binghamton. The city and county paid twenty-five dollars per month rent and it was specified that the building was to be used for relief purposes. Thereafter the city and county departments of welfare used the building as a warehouse and distribution depot for commodities to be given to the poor, delivered to them by agents of the Federal government from time to time. The employees of the welfare departments of the city and county were in charge of the storage and distribution.

The Works Progress Administration, an agency of the Federal government, was engaged in the operation of a sewing project in the city for the purpose of providing work for women on relief. Without charge, the city permitted this agency to conduct the project in the northerly half of the old post office annex building. The city also provided light, heat, insurance and certain materials for the project while the Federal agency employed and paid the workers, all of whom, as a requisite to employment, had to be on relief. The southerly half of the building was retained by the city and county welfare departments and continued to be used for the storage of surplus commodities. The toilet and drinking water facilities were in the southerly half of the building and those employed on the sewing project passed across the southerly half of the building to these facilities. An employee of the city welfare department was in charge and supervised the storage of these commodities. Under his direction barrels of powdered milk weighing 200 pounds each had been piled in two tiers along the side of the passageway.

On August 12, 1938, the respondent was employed by the Works Progress Administration on its sewing project. While on her way to get a drink she passed between the barrels of powdered milk and one of them fell on her, causing serious personal injuries. On the question of negligence, the record amply sustains the findings of the jury in her favor. The barrels were stacked unevenly, those on top protruded over the bottom tier, were " wobbly " and not safely piled.

The more serious difficulty in so far as the respondent is concerned, is the contention by the city that its occupation and use of this building and the acts of its employees in storing and maintaining the commodities along the passageway were a governmental function and that it cannot be held liable for any negligence of its

employees while so engaged. The trial court held that the relation of the city to the Works Progress Administration was that of a landlord to a tenant, that it was engaged in a proprietary and not a governmental function and, therefore, not immune from the result of negligence on the part of its employees.

So much has been written on the subject of governmental and proprietary functions of a municipality that those phases of the law need no discussion here. It is firmly established that the administration of public charities is a public duty which is governmental in character and in the performance of which a municipal corporation is absolved from liability for the negligence of its agents. (*Maxmilian* v. *Mayor*, 62 N. Y. 160; *Augustine* v. *Town of Brant*, 249 id. 198; *Ottmann* v. *Village of Rockville Centre*, 275 id. 270.) While this rule is an anachronism and lacks appeal today, it is still the law in our jurisdiction. If it is to be abandoned it should be by forthright legislative action or judicial overruling and not by the attrition of artificial exceptions.

This entire building was being used for the administration of public relief. The sewing was a relief project and any part had by the city in that project was an incident to the general administration of public relief in the city. The employees of the city who piled up and had charge of the barrels which fell on the plaintiff, were employees of the welfare department of the city. The passageway which plaintiff was using was in charge of and being maintained by the employees of the city welfare department. The plaintiff's presence in the building and in the passageway was as a recipient of public relief. No activities other than those of the administration of public relief were maintained or carried on by the city in this building. Its use was limited by the lease to relief purposes. The welfare commissioner of the city leased and used the building for relief purposes only. The city was not engaged as a landlord in the use and maintenance of this building or acting in a proprietary manner. The only purpose of occupancy was the administering of public relief and the acts of its agents which resulted in respondent's injuries were all incidental to and a part of the performance of its duties in this regard. (*Wilcox* v. *City of Rochester*, 190 N. Y. 137.)

The judgment should be reversed and the complaint dismissed, with costs.

Foster, J., concurs.

Judgment and order affirmed, with costs.