In the Matter of the Application of HARRY K. DIBBLE, as Commissioner of Public Welfare of Ontario County, New York, Petitioner, for a Review of the Determination of the NEW YORK STATE DEPARTMENT OF SOCIAL WELFARE, Respondent, in the Matter of the Settlement of WALTER W. WOODWARD and His Family.

Third Department, March 5, 1941.

F. Allen deGraw, for the petitioner.

John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor-General; F. R. Chant, Assistant Attorney-General, of counsel], for the respondent State Department of Social Welfare.

· BLISS, J.   The underlying question here is whether the wages received by Walter W. Woodward on a Works Progress Administra-

tion work relief project constituted relief within the meaning of the Public Welfare Law. It is conceded that the Woodward family lived in the town of West Bloomfield, Ontario county, N. Y., from June 22, 1936, to July 1, 1938, and that during this period Mr. Woodward was employed on a Works Progress Administration project. If the wages which he received did not constitute relief within the meaning of the Public Welfare Law as it then stood, then Woodward and his family had a settlement in the town of West Bloomfield.

During the period in question, section 56 of the Public Welfare Law provided that no person should gain a settlement in a town except by residing for one year continuously without receiving public relief or care at the expense of any such town or of any other town or of the United States of America. Since then, by chapter 802, Laws of 1939, this section has been amended to provide that any wage or payment of any kind received after June 1, 1939, by any person certified as in need from any public agency or office administering relief or work relief shall be deemed to be public relief within the meaning of the article of the Public Welfare Law relating to settlement. Thus, by this amendment it is now clear that a recipient of Public Works Administration work relief wages is receiving public relief. The statute was not so clear prior to the amendment of 1939. However, an examination of the Federal statutes relating to emergency relief leaves no doubt that the purpose and intent was to provide relief for those in need. The Federal Emergency Relief Act of 1933, which apparently was the first of the series of emergency relief acts adopted by our Federal government, provided in its declaration of purpose: " The Congress hereby declares that the present economic depression has created a serious emergency, due to widespread unemployment and increasing inadequacy of State and local relief funds, resulting in the existing or threatened deprivation of a considerable number of families and individuals of the necessities of life, and making it imperative that the Federal government cooperate more effectively with the several States and territories and the District of Columbia *in furnishing relief to their needy and distressed people.*" (Italics supplied.) This act created the Federal Emergency Relief Administration to administer the act. The rules prescribed under this act by executive order, authorized the Federal Emergency Relief Administrator under certain circumstances, to assume control of the administration of relief in any State. Each of the Federal acts thereafter making additional appropriations for the same purposes, contains the

preamble " that in order to continue to provide work relief on useful projects, and relief " there was appropriated certain amounts to the Works Progress Administration. The Federal Emergency Relief Acts from 1933 down through 1938 contain many other references to the administration of relief, all showing that the purpose of the acts was to provide relief to the needy.

It is, therefore, apparent that while the recipient of Federal moneys under these various emergency relief acts received the same in the form of wages, nevertheless, they were intended to be and actually were payments of relief and the various statutes so state.

The respondent calls our attention to *Duren* v. *City of Binghamton* (258 App. Div. 694; affd., 283 N. Y. 467). That case holds nothing to the contrary and the Court of Appeals did not there pass upon the status of the plaintiff who was employed on a Works Project Administration project.

The determination of the State Department of Social Welfare should be annulled, with fifty dollars costs and disbursements, and an order granted determining that Walter W. Woodward and his family have a settlement in the city of Rochester, county of Monroe.

HILL, P. J., HEFFERNAN, SCHENCK and FOSTER, JJ., concur.

Determination reversed on the law and facts, with fifty dollars costs and disbursements, and order granted determining that Walter W. Woodward and his family have a settlement in the city of Rochester, county of Monroe.