62 N.Y.2d 506 (1984)
Madelyn Miller, Appellant,
v.
State of New York, Respondent.
Court of Appeals of the State of New York.
Argued May 9, 1984.
Decided June 14, 1984.
Joseph Kelner and Martin Rubenstein for appellant.
Robert Abrams, Attorney-General (Julie S. Mereson and Peter H. Schiff of counsel), for respondent.
Judges JASEN, JONES, WACHTLER, MEYER and SIMONS concur with Chief Judge COOKE; Judge KAYE concurs in result in a separate opinion.
*508 Chief Judge COOKE.
When the State operates housing, it is held to the same duty as private landlords in the maintenance of physical security devices in the building itself. Thus, a student who is injured in a criminal assault in a State-operated college dormitory may recover damages against the State in its *509 capacity as a landlord upon a showing that there was a reasonably foreseeable likelihood of criminal intrusion into the building, that the State negligently failed to keep the outer doors locked, and that the failure was a proximate cause of the injury.
The claimant, Madelyn Miller, a 19-year-old junior at the State University of New York (SUNY) at Stony Brook, was confronted in the laundry room of her dormitory at approximately 6:00 A.M. on March 9, 1975, by a man wielding a large butcher knife. She was blindfolded and prodded out of the room, through an unlocked outer door from the basement, back in another unlocked entrance to the dormitory, up some stairs to the third floor and into a dormitory room, where she was raped twice at knifepoint and threatened with mutilation or death if she made any noise. Finally, her assailant led her out to the parking lot, where he abandoned her. The assailant was never identified, and the trial court found that he was an intruder in the dormitory with no right or privilege to be present there. Strangers were not uncommon in the hallways, and there had been reports to campus security of men being present in the women's bathroom. Claimant herself had complained twice to the Assistant Quad Manager of her dormitory area about nonresidents loitering in the dormitory lounges and hallways when they were not accompanied by resident students. The school newspaper had published accounts of numerous crimes in the dormitories such as armed robbery, burglaries, criminal trespass, and a rape by a nonstudent. Notwithstanding these reports, the doors at all of the approximately 10 entrances to the dormitory building were concededly kept unlocked at all hours, although the doors each contained a locking mechanism.
Claimant sued the State for her damages. The Court of Claims construed the claim as asserting two theories of liability for negligence. One, based upon defendant's negligent failure to provide adequate police protection, was held to be a governmental activity subject to sovereign immunity under the circumstances of this case because the plaintiff had not established any special relationship with defendant. Liability was imposed upon the State, however, upon the other theory that it was acting in a proprietary *510 capacity as a landlord. The court found that by failing to lock the outer doors of the dormitory, the State had breached its duty to protect its tenants from reasonably foreseeable criminal assaults by outsiders. In particular, the failure to lock the outer doors was found to be a proximate cause of the rape. Claimant was found not to be contributorily negligent for being in the laundry room after sunrise on a Sunday morning (see CPLR 1411 [which did not become effective until Sept. 1, 1975]). Claimant's evidence as to her extensive emotional injuries was credited by the trial court, which awarded her $25,000 in damages.
Claimant appealed on the ground of inadequacy of damages and the State cross-appealed on the question of liability. The Appellate Division reversed, on the law, and dismissed the claim, reasoning that although claimant sought to recover based upon the State's liability as a landlord, "in actuality, the claim was based upon the State's failure to provide adequate police protection." Because claimant never established a special relationship between the State and herself, the court found that the State owed no duty to claimant in particular and, thus, could not be responsible for any failure of campus police security measures. This court now reverses.
Public entities remain immune from negligence claims arising out of the performance of their governmental functions, including police protection, unless the injured person establishes a special relationship with the entity, which would create a specific duty to protect that individual, and the individual relied on the performance of that duty (see De Long v County of Erie, 60 N.Y.2d 296, 304; Florence v Goldberg, 44 N.Y.2d 189, 195; Riss v City of New York, 22 N.Y.2d 579, 583; Motyka v City of Amsterdam, 15 N.Y.2d 134, 139; Bass v City of New York, 38 AD2d 407, 413, affd no opn 32 N.Y.2d 894). Claimant does not now urge recovery on this theory. Rather, claimant contends that she presented an enforceable claim under her other pleaded theory, that the State failed as a landlord to properly maintain the dormitory, specifically, by failing to lock the outer entrances.
*511 In addition to allegations of inadequate police protection, the claim also embraced a charge against the State in its capacity as a landlord, alleging that the State was "vested by such law with the ownership, care, custody, control and maintenance of * * * school properties of SUNY at Stony Brook, with their buildings * * * and in particular [claimant's] dormitory," and that the injuries suffered were caused by the State's negligence in its "failure to maintain reasonable security * * * in particular in the dormitory known as Horace Greeley College." The bill of particulars alleged specific acts of negligence by the State in its landlord capacity, averring that defendant was "careless, reckless and negligent in failing to provide adequate security devices; * * * [and] in failing to provide locks on the outer doors of the dormitories". Thus, the Appellate Division erred in characterizing the claim as sounding solely in inadequate police protection.
Defendant asserts that there was insufficient evidence as a matter of law to support a finding of liability against the State for negligence in its landlord capacity. It reasons that the decision whether to keep the outer doors locked was made by defendant in its police capacity and, as such, constituted part of an executive decision as to how security resources for the entire campus were to be allocated in general, which is a governmental function for which the State is immune from liability.
It is not disputed that when the State acts in a proprietary capacity as a landlord, it is subject to the same principles of tort law as is a private landlord (see Court of Claims Act, § 8; Preston v State of New York, 59 N.Y.2d 997, 998; Bass v City of New York, 38 AD2d 407, 411, affd no opn 32 N.Y.2d 894, supra; Duren v City of Binghamton, 172 Misc 580, affd 258 App Div 694, affd 283 N.Y. 467). The difficulty here arises from defendant's dual role, where it has acted in a proprietary capacity as a landlord by its ownership and control of the SUNY campus, and also in a governmental capacity by providing police protection through the appointment of campus security officers "to preserve law and order on the campus" (see Education Law, § 355, subd 2, par m). A governmental entity's conduct may fall along a continuum of responsibility to individuals *512 and society deriving from its governmental and proprietary functions. This begins with the simplest matters directly concerning a piece of property for which the entity acting as landlord has a certain duty of care, for example, the repair of steps or the maintenance of doors in an apartment building. The spectrum extends gradually out to more complex measures of safety and security for a greater area and populace, whereupon the actions increasingly, and at a certain point only, involve governmental functions, for example, the maintenance of general police and fire protection. Consequently, any issue relating to the safety or security of an individual claimant must be carefully scrutinized to determine the point along the continuum that the State's alleged negligent action falls into, either a proprietary or governmental category.
"[I]n determining the extent and scope of the [State's] duties as a landlord, we must `distinguish those liabilities attendant upon governmental activities which have displaced or supplemented traditionally private enterprises' (Riss v. City of New York, 22 N.Y.2d 579, 581) and are performed in a proprietary capacity from those which are and have always been considered governmental in nature" (Bass v City of New York, 38 AD2d 407, 411, affd no opn 32 N.Y.2d 894, supra). In Bass, the City was the landlord of the public housing complex where the plaintiff's decedent was murdered. The negligent act complained of was inadequate police protection because only one policeman was assigned to the complex and he was at lunch instead of patrolling when decedent was raped and murdered on the roof of one of the buildings. The police at the complex were members of the New York City Housing Authority Police, the maintenance of which was a governmental operation comparable in scope to the police force of the municipality itself, and was subsidized by the City so that it could continue to provide police protection to areas under its domain (id., at pp 412-413). Thus, the City was held immune from liability, notwithstanding that it was the landlord of the complex, because the furnishing of police protection was so clearly a governmental function for which immunity attached in the absence of a showing of special duty, that the negligent act was removed from its landlord capacity and *513 was attributed to its governmental function (see id., at p 413). In this way, a governmental entity which is a landlord is distinguishable from a private landlord, which would remain liable for the negligent performance of a security force it retained for the safety of its tenants.
When the liability of a governmental entity is at issue, "[i]t is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability, not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred" (Weiner v Metropolitan Transp. Auth., 55 N.Y.2d 175, 182). Here, the act complained of under the landlord theory of liability was the failure to lock the outer doors of the dormitory. Ownership and care relating to buildings with tenants has traditionally been carried on through private enterprise, specifically by landlords and thus constitutes a proprietary function when performed by the State (see Bass v City of New York, 38 AD2d 407, 411, affd no opn 32 N.Y.2d 894, supra).
"As a landowner, the State `"must act as a reasonable [person] in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk"'" (Preston v State of New York, 59 N.Y.2d 997, 998, supra, quoting Basso v Miller, 40 N.Y.2d 233, 241). Under this standard, a landlord has a duty to maintain minimal security measures, related to a specific building itself, in the face of foreseeable criminal intrusion upon tenants (see Nallan v Helmsley-Spear, Inc., 50 N.Y.2d 507 [prima facie negligence asserted by plaintiff shot by an unknown assailant as he leaned over guest register in defendant's office building where sign-in attendant was absent and building door unlocked]; Loeser v Nathan Hale Gardens, 73 AD2d 187 [landlord liable when tenant assaulted in parking lot of apartment when large fluorescent light was negligently not turned on]; Sherman v Concourse Realty Corp., 47 AD2d 134 [landlord who had lock cylinder out for repairs so that buzzer system was inoperable was liable when tenant was robbed by criminal intruder]; Skaria v State of New York, 110 Misc 2d 711 *514 [landlord liable for tenant's rape when security measures of landlord were inoperable that day]). Thus, defendant here had a duty to take the rather minimal security measure of keeping the dormitory doors locked when it had notice of the likelihood of criminal intrusions.
As a relatively restricted action, having locked doors falls within the scope of the State's proprietary function as a landlord. This is not to say that further security measures relating to a particular dormitory or the entire campus might not be located so far along the continuum as to be beyond the scope of the State's duty as a landlord and constitute actions undertaken in its police protection capacity.
This court further determines that there was sufficient evidence on the record to support the Trial Judge's conclusion that the State's failure to lock the outer doors was a breach of the State's duty and a proximate cause of the rape.
Accordingly, the order of the Appellate Division should be reversed, and the case remitted to the Appellate Division, Second Department, for determination of the facts and issues not reached on the appeals to that court.
KAYE, J. (concurring).
While concurring in result, I write to emphasize my understanding that the imposition of liability upon the State in the circumstances presented is not a departure from Bass v City of New York (32 N.Y.2d 894) or Weiner v Metropolitan Transp. Auth. (55 N.Y.2d 175). The allocation of police resources remains a legislative executive decision. Although a commercial entity engaged in a particular activity may be required to furnish security guards, a governmental agency performing that same activity does not have the same obligation to assign police. (Weiner v Metropolitan Transp. Auth., 55 N.Y.2d 175, 182, supra.)
But governmental agencies acting as landlords are not exonerated from responsibility to furnish any security to their tenants. Liability is properly imposed in this case because of the policy adopted by the State, as landlord, of having all entrances to the dormitory unlocked at all *515 times, despite an open campus and reported criminal incidents. We do not decide whether the State similarly would be liable for a failure to keep all dormitory doors locked at all times. With several thousand students living in 27 dormitories at Stony Brook alone, each dormitory presumably having several entrances, that would be a truly onerous  if not impossible  obligation for any security force, involving the allocation of police resources.
Order reversed, with costs, and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.