92 N.Y.2d 553 (1998)
706 N.E.2d 1167
684 N.Y.S.2d 143
Fundisha Price, an Infant, by Her Mother and Natural Guardian, Shii Price, Appellant, et al., Plaintiff,
v.
New York City Housing Authority, Respondent.
Court of Appeals of the State of New York.
Argued September 15, 1998
Decided November 24, 1998.
Steve S. Efron, New York City, and Madeline Lee Bryer for appellant.
Herzfeld & Rubin, P. C., New York City (Herbert Rubin, David B. Hamm and Miriam Skolnik of counsel), for respondent.
Susan Xenarios, New York City, Ken Schaeffer and Galen Sherwin for Downstate Coalition for Crime Victims, New York State, and others, amici curiae.
Judges BELLACOSA, LEVINE, CIPARICK and WESLEY concur with Chief Judge KAYE; Judge SMITH dissents and votes to reverse in a separate opinion.
*557 Chief Judge KAYE.
Today, in Burgos v Aqueduct Realty Corp. (92 N.Y.2d 544), the Court delineates the standard for establishing proximate cause in suits against landlords for negligently secured premises by tenants injured as a result of a third party's criminal attack. This appeal, involving an attack on a tenant by someone known to be an intruder, differs from Burgos in several material respects, leading us to affirm the Appellate Division order, which itself affirmed the jury verdict in defendant's favor.
On the afternoon of December 12, 1987, while waiting in the lobby of the apartment building where she resided, plaintiff was pushed into an elevator, robbed and sexually assaulted at knifepoint by a person acknowledged by defendant building owner to have been an intruder. The front door of the building was not equipped with a lock. Plaintiff's mother, individually and on behalf of her daughter, sought damages for defendant's negligent failure to provide the building with adequate security. In a special verdict, the jury found that defendant was negligent, but additionally found that defendant's negligence was not a proximate cause of plaintiffs' injuries. The Appellate Division affirmed, concluding that the verdict on proximate cause was supported by the evidence.
Plaintiffs claim that the trial court's instruction overstated their burden of proof on causation and improperly instructed the jury on how it should view the testimony of interested witnesses. While plaintiffs (and the dissent) point to isolated statements they claim were improper, as we have innumerable times held the charge must be viewed as a whole to determine whether it adequately apprised the jury of the applicable legal standards. Viewing the charge in that light, we conclude that it correctly stated the law (see, Burgos v Aqueduct Realty Corp., 92 N.Y.2d 544, supra).
Plaintiffs further contend that defendant's obligation to implement reasonable security measures included the duty to warn of ongoing criminal activity in the area, and that it was error for the trial court to preclude them from proceeding on a duty to warn theory. When a public entity acts in a proprietary capacity as a landlord, it is held to the same duty as private landlords in providing security devices in the building (see, Miller v State of New York, 62 N.Y.2d 506, 508). However, it remains immune from negligence claims arising out of governmental functions such as police protection unless a special relationship *558 with a person creates a specific duty to protect, and that person relies on performance of that duty (id., at 510). Plaintiffs do not allege such a special relationship here. Since the duty to warn of ongoing criminal activity in an area involves the governmental function of allocation of police protection (see, Weiner v Metropolitan Transp. Auth., 55 N.Y.2d 175, 182), plaintiffs were properly precluded from maintaining a duty to warn claim.
Addressing the dissent, on this record no error of law was committed in admitting the testimony of Peter Smerick or Lakeshia Johnson.
Peter Smerick, who was qualified as an expert in criminal behavior analysis, testified that the minimal security afforded by a lock and intercom would not have deterred plaintiff's attacker, Ronnie Matthews. Smerick based his conclusion on Matthews' conduct, verbal behavior, and use of a knife during his attacks on plaintiff and several other victims. Smerick also considered the serial nature of Matthews' crimes. Whether expert testimony is admissible on a particular point is generally a mixed question of law and fact (see, Selkowitz v County of Nassau, 45 N.Y.2d 97, 101-102). Thus, the "admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court, and review beyond the intermediate appellate level is generally unwarranted" (People v Cronin, 60 N.Y.2d 430, 433; see also, People v Miller, 91 N.Y.2d 372, 379). While this Court can, of course, review a trial court's decision to admit expert testimony that constituted an abuse of discretion, there was no such abuse on the particular record before us.
First, contrary to the dissent, Smerick's testimony did not shift the jury's focus away from the issue of proximate cause. In order to demonstrate the proximate cause burden in a security premises case, a tenant victimized in a criminal attack must prove that the assailant was an intruder who gained access to the premises through a negligently maintained entrance (see, Burgos v Aqueduct Realty Corp., 92 N.Y.2d 544, supra). Plaintiffs in this case, however, chose to introduce additional evidence regarding proximate cause, which in turn led to Smerick's testimony rebutting this additional evidence.
While the dissent characterizes the testimony of plaintiffs' security expert Professor Hair as pertaining to "the properties of a lock and the manner in which a lock serves to secure a given area," Professor Hair in fact also testified that "criminals *559 are known * * * to take crimes of opportunity. A crime of opportunity, for example, would be a criminal walking by and checking a door and finding no lock on it. Well, let's go investigate, what are the opportunities to commit criminal acts, for example." Detective Robert Fleming, who investigated the attack and was one of the officers who arrested Matthews, also testified on plaintiffs' behalf that an unlocked door provides a person who is "immature and acts on impulse" with an opportunity to commit a crime. This testimony immediately followed plaintiffs' reading into the record of a psychiatric report of Matthews stating that "[h]is personality characteristics reflect a rather insecure and immature person who acts on impulse." Finally, Dr. Robert Goldstein, a psychiatrist called by plaintiffs, testified that unlike a stalker, an impulsive person is one "who just at the spur of the moment gets an impulse or a thought, and acts it out without thinking about the consequences."
The testimony plaintiffs offered about Matthews' impulsiveness and insecurity, and his propensity to commit crimes of opportunity when presented with an unlocked door, furnished the occasion for defendant to offer Smerick's contrary opinion that the presence of a lock would not have deterred Matthews from attacking plaintiff. The dissent disagrees that Smerick's testimony rebutted that of Dr. Goldstein and Detective Fleming because only part of their testimony concerned whether a lock would have deterred Matthews, and because those witnesses were called by plaintiffs for other purposes. As the testimony quoted from the record demonstrates, however, in actual fact plaintiffs' witnesses opened the door to Smerick's contrary opinion, regardless of why those witnesses were called or what other topics their testimony covered.
Furthermore, while the dissent correctly notes that Smerick did not have formal training in psychology or the behavioral sciences, an expert may be qualified without specialized academic training through "[l]ong observation and actual experience" (Meiselman v Crown Hgts. Hosp., 285 N.Y. 389, 398; see also, Caprara v Chrysler Corp., 52 N.Y.2d 114, 121, rearg denied 52 N.Y.2d 1073 [an expert's competency can be derived just as well "from the real world of everyday use" as from a laboratory]). As this record demonstrates, although he had no academic degree in the behavioral sciences, Smerick's skill, training, knowledge and experience were adequate to support an assumption that the opinion he rendered was reliable (see, Matott v Ward, 48 N.Y.2d 455, 459).
*560 Finally, it was not an abuse of discretion for the trial court to admit the testimony of Lakeshia Johnson, another of Matthews' victims. Johnson testified that at the time of the attack, the front door of her building had a working lock, but that Matthews was already in the lobby when she arrived there. The dissent argues, in effect, that Johnson's testimony was irrelevant since Johnson and plaintiff lived in different buildings, and there was no evidence demonstrating how Matthews entered Johnson's building. Determinations of relevancy rest largely in the discretion of the trial court (see, Radosh v Shipstad, 20 N.Y.2d 504, 508, rearg denied 20 N.Y.2d 969). Given the testimony adduced by plaintiffs regarding the effectiveness of locks and "crimes of opportunity," we cannot say that the trial court abused its discretion as a matter of law in determining that Johnson's testimony was relevant. Furthermore, any differences in the circumstances between Matthews' attacks on plaintiff and Johnson were appropriate subjects for cross-examination and argument to the jury. Indeed, in summation plaintiffs' counsel argued the relative strengths and weaknesses of the various witnesses.
Plaintiffs' remaining contentions are without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
SMITH, J. (dissenting).
Because the trial court abused its discretion when it admitted into evidence the testimony of a purported criminal profiler and the testimony of a young woman allegedly assaulted by the same attacker, I would reverse the order of the Appellate Division and remand the action for a new trial.
Seventeen-year-old Fundisha Price was returning home from choir practice when she was accosted near the lobby elevator bank of her building and taken up to the roof landing at knifepoint. Ms. Price was sexually assaulted and sodomized. The perpetrator, later identified as Ronnie Matthews, had entered the building through the front door that did not contain any locking device.[*] Ms. Price and her mother commenced this action against the New York City Housing Authority alleging *561 that its negligent failure to provide minimum security was the proximate cause of her injuries.
During the litigation, the Housing Authority conceded that it was negligent in failing to equip the building's front door with a lock, conceded that the perpetrator was not a resident of the building, and conceded that the perpetrator entered the building through the unlocked front door. Thus, the only contested issue was whether the Housing Authority's negligence was the proximate cause of Price's injuries.
At trial, plaintiff elicited the testimony of Professor Hair, a professor of security management at John Jay College of Criminal Justice. Professor Hair, who spent 25 years in the New York City Police Department and is a retired deputy inspector of the police force, also serves as a consultant to several corporations, institutions, and housing management organizations on matters of security. Professor Hair testified that a lock is a delaying security device; its primary function is to create a delay in the time in which an intruder could effect an unauthorized entry. In creating this delay, a lock also serves as a deterrent. Professor Hair stated that because a lock lessens the chances of successfully breaking into a building, there is a greater risk of capture to the criminal. If a door or entrance has no lock, the risk of capture decreases and thus the opportunity to commit a criminal act increases.
The Housing Authority, in response, called to the stand, as the last witness before the jury, Peter Smerick, a partner and vice-president of a self-described forensic or behavioral science consulting firm in Virginia. The firm, which consisted of four retired FBI agents and one retired Secret Service agent, uses the collective knowledge of these men to address issues of criminal behavior and violent crime. According to Smerick, the firm is called upon to perform criminal profiling and violent crime analysis whereby its members analyze the behavior of a criminal offender in a particular case. Smerick was previously an FBI expert in document examinations, including fingerprints and handwriting analysis, and in forensic photography. The court qualified him as an expert in "criminal behavior analysis."
In this case, Smerick was given numerous documents, including parole record hearings, police department investigative reports, indictments and other records pertaining to other *562 sexual assaults allegedly committed by Ronnie Matthews, and deposition transcripts of the victim and security experts. It is claimed that these documents provided information about Ronnie Matthews' background and behavior. Based upon his training and review of the data, Smerick testified that, in his expert opinion, Ronnie Matthews, the person who assaulted Fundisha Price, was a predatory serial rapist and a calculating career criminal who would not have been deterred by a lock on the door.
This evidence shifted the jury's focus away from the issue of proximate cause in this case. The trial court permitted Smerick to testify that there were six categories of rapists and that because Matthews was a so-called power assertive rapist, he would not have been deterred by a locked door. This evidence was totally irrelevant on the issue of whether it was reasonable for the jury to conclude that Matthews walked through an unlocked door prior to sexually assaulting the plaintiff. Again, the issue was not whether Matthews was the type of individual who would not have been deterred by a locked door but rather whether a jury could reasonably conclude that a door which was admittedly unlocked was a substantial factor in the assault upon the plaintiff.
I cannot agree with the majority that Smerick's testimony was in rebuttal to testimony given by Professor Hair, Dr. Goldstein and Detective Fleming.
Dr. Goldstein, a psychiatrist, was called to give a psychological assessment of the plaintiff. His conclusion was that as the result of being sexually assaulted, plaintiff was suffering "major depression with post-traumatic stress features." He attributed a change in her work, study and outside activities to the assault. Detective Fleming was called because he was the arresting officer and a person who conducted an extensive investigation of the crime. Smerick was not qualified to nor did he rebut the testimony of Dr. Goldstein. Moreover, there was no challenge by Smerick to the investigation by Detective Fleming.
"The guiding principle is that expert opinion is proper when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror" (De Long v County of Erie, 60 N.Y.2d 296, 307). The expert "should be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion *563 rendered is reliable" (Matott v Ward, 48 N.Y.2d 455, 459). The expert's opinion cannot be founded upon speculation or supposition (id., at 463).
Though Smerick's experiences with the Federal Bureau of Investigation were varied, his testimony did not clarify an issue or provide general or technical information from which a jury could draw factual inferences. While Smerick testified that he was trained to analyze information and draw conclusions about the identity of criminal suspects based on data provided and clues left behind, his testimony in this case went far beyond even his own training or experiences. In this case, Smerick rendered an opinion regarding Matthews' inner thoughts and future actions; he purported to be capable of "getting inside [the] mind" of Ronnie Matthews. But no foundation was established demonstrating Smerick's qualification to engage in such an activity. It does not appear that Smerick had any formal training in psychology or the behavioral sciences which would qualify him to forecast Matthews' future behavior. His testimony regarding what Matthews would have done had a lock been in place was sheer speculation.
Moreover, it cannot be argued that Smerick's testimony was brought in rebuttal to the testimony of Professor Hair. The primary focus of Professor Hair's testimony was upon the properties of a lock and the manner in which a lock serves to secure a given area. Smerick's testimony went beyond the properties of a lock. In fact, Smerick's testimony had nothing at all to do with a lock, but was focused on the "properties" of the perpetrator. It cannot reasonably be said that Professor Hair opened the door to such testimony.
Finally, the testimony of another young woman sexually assaulted by Ronnie Matthews in another apartment complex should not have been presented to the jury. That individual testified that though the front door of her building had been locked, Matthews was already inside of her building when she passed through the front door. This testimony was adduced, it appears, to buttress the contention that Matthews would have found a way to enter the building notwithstanding the presence of a lock. However, there was no evidence demonstrating that Matthews was not a guest of a tenant in that particular building or that he entered that building along with another resident, or even that he entered the building in another manner. No foundation existed from which a fact finder could infer that because Matthews entered one building with a locked front door, Matthews could enter all buildings with locked doors.
*564 Indeed, this victim's testimony was simply irrelevant. "Evidence is relevant if it has any tendency in reason to prove the existence of any material fact, i.e., it makes determination of the action more probable or less probable than it would be without the evidence" (People v Scarola, 71 N.Y.2d 769, 777). That Matthews gained entry into this particular building is not probative of whether he would have been able to gain entry into plaintiff's building had defendant placed a lock on the front door. The young woman's testimony could not and did not address or clarify the critical issue before the jury: whether defendant's failure to place a lock on the front door of Fundisha Price's apartment building was the proximate cause of the sexual assault.
Finally the court's charge was flawed. The court's charge was that "it must be demonstrated if plaintiff is to establish that an unlocked or defective door was a proximate cause, that other means of access have been ruled out. I use the term ruled out as doctors sometimes do." Contrary to this charge, plaintiff was required to prove only that it was "more likely" than not that an assailant entered the premises through an unlocked door (Schneider v Kings Highway Hosp. Ctr., 67 N.Y.2d 743, 745; Burgos v Aqueduct Realty Corp., 92 N.Y.2d 544).
In sum, the admission of Smerick's testimony and that of another victim of sexual assault were irrelevant to the proximate cause issue in this case and constituted prejudicial error. The charge to the jury was also flawed.
Order affirmed, with costs.
NOTES
[*] Between December 20 and December 22, 1987, several victims viewed a photo array of various paroled offenders. Ronnie Matthews was identified by some of the victims as a possible suspect. On December 23, 1987 two officers from the Manhattan Sex Crimes Squad apprehended Matthews in the hallway of 210 West 153rd Street. He was brought to the Housing Authority Police Department for the purpose of conducting lineup identifications and he was positively identified by four of the victims. Matthews was then arrested.