OPINION OF THE COURT
Terry Jane Ruderman, J.
Claimant seeks damages for injuries she sustained while she was incarcerated at Bedford Hills Correctional Facility (Bedford) from June of 1996 until February 10, 1997, during which time she was raped by Correction Officer Thomas *927 Haynes. The trial of this claim was bifurcated and this decision pertains solely to the issue of liability.
On January 16, 1998, Correction Officer Thomas Haynes pleaded guilty to the crime of rape in the third degree in acknowledgment that he had sexual intercourse with claimant on February 10, 1997 at Bedford. An inmate is deemed incapable of consent to a sexual act with an employee of the State Department of Correctional Services (Penal Law § 130.05 [3] [e]).
Claimant testified that in June 1996, while she was incarcerated at Bedford, she was raped for the first time by Haynes. She further testified that one month later she was raped again by Haynes. After the second incident, she advised Sergeant Cliff Richmond what had happened and, at his request, prepared a written statement for him. She also confided in Sergeant Richard Budd, Sergeant Steven Fredricks, and Correction Officer Bonnie Pawlak. Although claimant -received assurances that her concerns would be passed along, there was no change in Haynes’ presence around the facility.
Budd offered to place claimant in protective custody. Since this meant that claimant would be confined to her cell for 23 hours a day, claimant viewed the suggestion as a form of punishment and declined the offer. On February 10, 1997, claimant reiterated her fears of a future rape to Correction Officer Bonnie Pawlak. According to claimant, Pawlak said she would talk to “somebody” and took claimant to her work assignment.[1] Later that evening, Haynes raped claimant for the third time. Claimant secured evidence of the crime and Haynes was arrested three days later.
The deposition testimonies of Budd, Richmond, Fredricks and Pawlak were admitted into evidence. They corroborate claimant’s testimony that she had reported Haynes’ behavior. Budd testified that claimant had complained to him about Haynes a few days before the February 10, 1997 rape. While Budd was not sure that claimant was telling the truth, he forwarded the information to Deputy Superintendent Fenton or Captain Livlen and monitored Haynes whenever he worked in Budd’s area. Budd did not receive any instructions that claimant should be distanced from Haynes.
Prior to the February 10, 1997 rape, Budd had also received complaints from two other inmates concerning sexual encoun *928 ters with Haynes. Budd had also heard correction officers refer to Haynes’ sexual encounters with other inmates. As far as Budd knew, Haynes had never been limited officially in his contact with inmates.
Richmond testified that on February 4, 1997 he had received complaints from claimant regarding two prior incidents of improper sexual conduct with Haynes. Claimant provided a written statement to Richmond memorializing her allegations. By memorandum dated February 4, 1997, Richmond forwarded claimant’s statement to Bedford Superintendent Elaine Lord.
Richmond noted that on various occasions claimant had provided information which had been reliable. He believed that claimant had had sexual contact with Haynes prior to February 4th and offered her the option of protective custody. Richmond was also .aware that there were rumors throughout Bedford that Haynes was sexually involved with inmates. Although Richmond testified that, prior to February 10, 1997, there was an investigation conducted by Lord concerning this matter, he provided no details. Significantly, there was no additional evidence substantiating any inquiry undertaken by correction officials.
Richmond also testified that he took no further action after forwarding the memorandum to Lord. He explained that, if the regular procedures were followed, the Inspector General’s Office would have been immediately notified by Lord. In regard to claimant, Richmond was not contacted by the Inspector General’s Office until February 15, 1997, nine days after this report and five days after the February rape.
Fredricks testified that in January 1997 he looked into complaints of sexual misconduct by Haynes involving inmate Nicole Eaddy. After interviewing Eaddy, Fredricks forwarded a memorandum setting forth her allegation to his supervisor, Lieutenant Taylor. Fredricks took no further action. Prior to February 10, 1997, he also had interviews with two other inmates in reference to sexual misconduct by Haynes.
Pawlak testified that, in February 1997, claimant expressed her concern that Haynes wanted to have sex and that she had previously reported her fears to Richmond. Pawlak did not recall the exact date, but knew she had spoken to claimant in the early evening in the tunnel area when claimant was scheduled to go to her work assignment. Pawlak told claimant to prepare a statement that would be picked up later. Pawlak never retrieved the statement, nor did she report the allegation to anyone.
*929 Defendant rested after claimant’s case.
It is well established that “[t]he State just as any other party * * * is responsible, in the operation and management of its schools, hospitals and other institutions, only for hazards reasonably to be foreseen, only for risks reasonably to be perceived” (Flaherty v State of New York, 296 NY 342, 346) and with respect to the safety of persons on its property, the duty of the State is one of reasonable care under the circumstances (see, Miller v State of New York, 62 NY2d 506, 513; Basso v Miller, 40 NY2d 233, 241).
Upon listening to the witnesses testify and observing their demeanor as they did so, the court finds that the credible evidence established that, prior to the February incident, defendant had notice that Haynes posed a danger to claimant. Indeed, defendant offered claimant protective custody in response to her allegations. Given Haynes’ position as a correction officer, protective custody can hardly be viewed as an effective manner of assuring that claimant would not be accessible to Haynes. Further, the court rejects defendant’s argument that, by refusing protective custody, which would require claimant to be confined to her cell 23 hours a day, claimant assumed the risk of being raped by Haynes. It was not claimant’s movement within the facility that needed to be confined, it was Haynes’. Défendant, however, failed to demonstrate to this court that it took any steps toward monitoring Haynes’ movement and behavior in the facility. Significantly, there was not even any testimony regarding the procedures of conducting an investigation. While defendant maintains that an investigation was undertaken, the absence of proof fails to convince this court that anything meaningful was ever done until five days after the February incident. Under the circumstances, the court finds no basis for apportioning liability between defendant and Haynes for the rape which occurred on February 10, 1997 in defendant’s facility. Accordingly, the court finds defendant 100 percent liable for damages relating to the February incident.[2]
Upon filing of this decision, the court will set the matter down for a trial on the issue of damages as soon as practicable.

. All quotations are to the trial notes or audio tapes unless otherwise indicated.

. With regard to the alleged rapes in June and July of 1996, the court finds that there was insufficient proof to establish that defendant had notice of the danger which Haynes posed to claimant prior to the summer of 1996.