OPINION OF THE COURT
Stephen J. Mignano, J.
*324 This is a timely filed claim for personal injuries sustained by Orlando Torres on March 23, 1999 when he was assaulted by an unknown person at the Bronx County Courthouse. The trial of this action was bifurcated and this decision deals only with the issue of liability.
Claimant testified that on March 23, 1999, at approximately 9:30 a.m., he entered the Bronx County Courthouse (hereinafter Courthouse) located at 851 Grand Concourse, Bronx, New York, to submit paperwork to obtain a passport.* Claimant passed through the security area and proceeded to the passport office to submit his application. After leaving the passport office, he entered the men’s room on the second floor. While washing his hands he turned his head to the left and was struck on the left side of his face by a fist. Claimant stated that the assailant struck him on the head with some type of blade. After being struck, claimant fell and the assailant dropped what appeared to be a box cutter blade which claimant managed to pick up and toss away. The assailant then pulled claimant’s jacket over his head. Claimant stated he heard the sound of a knife opening and was then stabbed twice in the abdomen. He testified that he lost consciousness and awoke to find himself on the men’s room floor with his pants pockets cut and his wallet stolen. He eventually crawled out of the men’s room and was found by a court officer. He was seen by emergency medical personnel, court officers and members of the New York City Police Department who responded to the 911 call for assistance. Claimant was taken by ambulance to a hospital where he received emergency medical treatment and was held for overnight observation. No assailant was ever arrested for the assault. A New York City Police Department voucher indicates that a single-edge razor was recovered at the scene (exhibit 17).
Claimant called Major J. Mark Bodde who described the Courthouse as a nine-story building containing 13 interior floor areas (basement and mezzanines). The building, which is owned and maintained by the City of New York, contains courtrooms and offices used by the New York State Officé of Court Administration (hereinafter OCA) as well as the Bronx Borough President and several other agencies. The State of New York, *325 through OCA, provides security for the building. On March 23, 1999 the security force consisted of armed court officers with Major Bodde as the commanding officer in charge of overall security for the entire building. In March 1999 there were three public entrances, two entrances for judges and one for employees. The employee entrance was manned by court officers who admitted only employees with proper identification. There were no magnetometers or x-ray machines at this entrance. The judges’ entrances were locked and only accessible by a key. Once inside the entrance, an additional key card was required for access to the remaining portion of the building. Each of the three public entrances was guarded by armed court officers operating x-ray machines and magnetometers. Attorneys with secure court identifications were permitted to enter the building without being searched. All other persons were required to step through the metal detectors and to have their personal belongings searched. In the event the metal detector indicated that any person possessed a metal object, he or she would be examined by a court officer with a handheld metal detector. All of the metal detectors were calibrated on a daily basis to the existing state standards. After claimant’s incident was reported on March 23, 1999, the security systems were inspected and it was determined that all security measures were in place and operating properly.
At the conclusion of claimant’s case, the State moved to dismiss on the ground that claimant failed to establish a prima facie claim. The court reserved decision. The State rested without calling any witnesses and moved to dismiss on the ground that claimant failed to prove his claim by a preponderance of the credible evidence. The court again reserved decision.
The court must first determine whether the acts of negligence alleged by claimant arose from the State’s performance of a governmental function or a proprietary one. This inquiry is implicated because the law is well settled that public entities are “immune from negligence claims arising out of the performance of their governmental functions, including police protection, unless the injured person establishes a special relationship with the entity, which would create a specific duty to protect that individual, and the individual relied on the performance of that duty” (Miller v State of New York, 62 NY2d 506, 510 [1984]; McEnaney v State of New York, 267 AD2d 748, 749 [1999]; see Cuffy v City of New York, 69 NY2d 255 [1987]).
There is no bright-line test for determining whether a particular activity constitutes a governmental or proprietary function. *326 As the Court of Appeals explained in Miller v State of New York (62 NY2d 506, 511-512 [1984], supra):
“A governmental entity’s conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions. This begins with the simplest matters directly concerning a piece of property for which the entity acting as landlord has a certain duty of care, for example, the repair of steps or the maintenance of doors in an apartment building. The spectrum extends gradually out to more complex measures of safety and security for a greater area and populace, whereupon the actions increasingly, and at a certain point only, involve governmental functions, for example, the maintenance of general police and fire protection. Consequently, any issue relating to the safety or security of an individual claimant must be carefully scrutinized to determine the point along the continuum that the State’s alleged negligent action falls into, either a proprietary or governmental category” (emphasis supplied).
The State as a landowner must act as a reasonable person in maintaining its property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury and the burden of avoiding the risk (Miller v State of New York, 62 NY2d 506 [1984], supra; Basso v Miller, 40 NY2d 233 [1976]). Under this standard, a landlord has a duty to maintain minimal security measures, related to the specific building itself, in the face of foreseeable criminal intrusion (Miller v State of New York, 62 NY2d 506 [1984], supra; see Nallan v Helmsley-Spear, Inc., 50 NY2d 507 [1980]). In Miller (supra), the Court determined that the failure to keep outer doors of a dormitory building locked fell within the State’s proprietary function as a landlord. However, the Court further stated (at 514): “This is not to say that further security measures relating to a particular dormitory or the entire campus might not be located so far along the continuum as to be beyond the scope of the State’s duty as a landlord and constitute actions undertaken in its police protection capacity.”
Claimant asserts that the State was negligent in carrying out “the minimal security measures” of operating magnetometers, handheld scanners or x-ray devices in allowing a person to enter the Courthouse with a razor blade. However, the record establishes that all prescribed security measures were in place *327 and properly administered on March 23, 1999. Thus what claimant is actually alleging is that the security system, as prescribed and properly operated, was inadequate to protect him from criminal activity. The court concludes that the police function of administering security measures, such as screening all members of the general public entering the Courthouse, falls to the “governmental” end of the continuum. No liability arises from the negligent performance of such a function absent a showing of a special duty of protection owed to claimant individually (Bonner v City of New York, 73 NY2d 930 [1989]; Marilyn S. v City of New York, 73 NY2d 910 [1989], affg 134 AD2d 583 [1987]; Rashed v State of New York, 232 AD2d 394 [1996]; Laura O. v State of New York, 202 AD2d 559 [1994]; Pugliese v City of New York, 115 AD2d 465 [1985]; Descartes v State of New York, Ct Cl, Oct. 7, 1994, Mega, J., Claim No. 89240, Motion No. M-49817).
Given the determination that the case at bar falls within the State’s governmental function, claimant’s action must depend upon the existence of a “special duty” owed him by the defendant. The elements of this special duty or special relationship are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the government body’s agents that inaction could lead to harm; (3) some form of direct contact between the government body’s agents and the injured party; and (4) that party’s justifiable reliance on the government body’s affirmative undertaking (Cuffy v City of New York, 69 NY2d 255, 260 [1987]; see Shinder v State of New York, 62 NY2d 945, 946 [1984]; see also Sorichetti v City of New York, 65 NY2d 461, 469 [1985]).
The court finds claimant has failed to establish an assumption by the State, through promises or action, of an affirmative duty to act on behalf of claimant individually to any extent greater than that owed to the general public entering the building. Claimant failed to establish that a state employee acted on claimant’s behalf or made any promises or assurances to claimant. Thus, the State did not assume any affirmative duty upon which claimant might have justifiably relied and there is no legal basis for liability (see Doe v Town of Hempstead Bd. of Educ., 18 AD3d 600 [2005]; see also Sostre v City of N.Y. Hous. Auth., 150 AD2d 766 [1989]). In short, the defendant in this matter owed no greater duty to claimant than to all other members of the public entering the Courthouse that day.
*328 Assuming, arguendo, the court found that this was a proprietary function rather than a governmental function, the claim would still be dismissed. Claimant failed to establish by a preponderance of the credible evidence that the court officers were negligent in the performance of their duties or that the magnetometers were improperly maintained or used. Major Bodde’s uncontroverted testimony was that the magnetometers were calibrated to state standards on a daily basis. Claimant did not submit any expert testimony establishing a departure from any accepted standard, or any deficiency in the security provided. The State is not an insurer of the safety of those entering its buildings and the happening of án incident does not create an inference of negligence (see Mochen v State of New York, 57 AD2d 719 [1977]). To hold the State liable for the failure to find any and every weapon with a metal detector would raise the State to the level of an insurer (see Rosario v State of New York, Ct Cl, Nov. 7, 2002, Mignaho, J., Claim No. 100086; see also Smith v State of New York, Ct Cl, Oct. 27, 1998, Bell, J., Claim No. 94804).
Based upon the above analysis, the court finds that claimant has failed to establish the existence of a special relationship between claimant and the State. Upon this record, the court finds that claimant has failed to establish that this cowardly and heinous assault upon claimant by the unknown assailant was proximately caused by any negligence on the part of the defendant. Accordingly, the State’s motion made at the conclusion of trial, upon which the court reserved decision, is now granted and the claim is hereby dismissed. All other motions made at trial, upon which the court reserved decision are now denied.

 Claimant had previously been to the Courthouse on two occasions. Once in the early 1990s for jury duty and once in January or February 1999 to obtain the passport application. On each occasion he entered through the main entrance located on the Grand Concourse and was met with security measures that included x-ray machines and magnetometers manned by New York State court officers.