OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be reversed, with costs, and the complaint dismissed.
On June 2, 1983, plaintiff, a New York City public school teacher, and five other school teachers were assigned to supervise the school playground at P.S. 153 in Manhattan during a play period. On the two sides that border City streets, the playground is enclosed by a high chain link fence and can be entered through iron gates — one gate on the north side of the playground, the other on the south. When plaintiff entered the playground, he saw several older children, not then students of the school, playing basketball there. Plaintiff locked the gate on the south side, and because the north gate was off its hinges and could not be locked, he stationed himself at that gate; as plaintiff testified, when a playground gate was unlocked during the play period his job was to be posted at the gate for the security of the school children in the yard. The teacher in charge of the playground later asked plaintiff to break up a fight between two boys, which he did. Discovering that one of the two boys was not a student at the school, plaintiff forcibly escorted him out through the schoolyard’s north gate. After the boy’s older cousin came into the yard and pushed plaintiff, the boy returned to the playground with a baseball bat, swung it at plaintiff and injured his wrist.
*932 In this personal injury action plaintiff complained that defendants were negligent in allowing the gate to remain broken, failing to provide adequate levels of security in the schoolyard or provide proper training to teachers and persons charged with supervision during play periods, failing to assist plaintiff during the altercation, allowing intruders to enter the playground, failing to provide sufficient personnel at the broken gate to prevent their entry, and allowing the play period in the schoolyard despite the broken gate. The jury returned a verdict of $200,000 in favor of plaintiff and against defendant Board of Education, finding plaintiff 50% responsible for his own injuries. The Appellate Division affirmed plaintiff’s judgment, without opinion.
Contrary to plaintiff’s assertions, the particular negligence alleged is not the failure to fulfill a proprietary function, for which a municipal defendant may be held liable (see, Miller v State of New York, 62 NY2d 506). Plaintiff’s claim is premised on the contention that defendant’s security system — of which he concededly became a part when he stationed himself at the north gate — was inadequate to protect him from criminal activity. It is settled, however, that the provision of security against physical attacks by third parties in circumstances as are presented here, is a governmental function involving policymaking regarding the nature of the risks presented, and that no liability arises from the performance of such a function absent a special duty of protection (see, Vitale v City of New York, 60 NY2d 861; Glick v City of New York, 42 NY2d 831, affg on mem at 53 AD2d 528; see also, Marilyn S. v City of New York, 73 NY2d 910 [decided today]). In that a governmental function is at issue here, and plaintiff failed to establish that defendant had assumed a special duty to him, there was no legal basis for the judgment in his favor.
While we do not dispute the description of our prior holdings recited in the dissent, we do disagree as to their application to the facts of this case. As the dissent observes, providing security to public school teachers against criminal acts by third parties is a governmental function, and a school may not be liable for negligence in the absence of a special duty. Where we part company is with respect to the conclusion that the conduct at issue here may be likened to the school’s failure to repair steps. Despite the trial court’s erroneous submission of the matter to the jury on the theory that only a proprietary function was at issue, plaintiff’s own testimony established that his station at the schoolyard’s north gate was *933 in accordance with prior instruction, for the security of the school children, when the gate could not be locked. The situation is not unlike Marilyn S. v City of New York (supra), also decided today. While plaintiff there portrayed the alleged failure as "proprietary” — arguing that a system of locks already in place was not maintained in a reasonable fashion— we all agree that the school’s failure to maintain the key control system in that case was an aspect of the school’s overall security system and thus a governmental function; the same may be said of the north gate in this case.
Finally, we note that the issues in this case are presented to us solely in terms of "governmental” and "proprietary” functions (see, Matter of County of Monroe, 72 NY2d 338), and thus reconsideration of the distinction in the present context is unwarranted.