[615 NYS2d 369]

Mary E. Clinger, Respondent, v New York City Transit Authority, Appellant.

First Department, August 11, 1994

## APPEARANCES OF COUNSEL

*Steve S. Efron* of counsel *(Albert C. Cosenza,* attorney), for appellant.

*Jeffrey Schreiber* of counsel *(Marvin V. Ausubel* on the brief; *Fried, Frank, Harris, Shriver & Jacobson,* attorneys), for respondent.

## OPINION OF THE COURT

TOM, J.

On March 20, 1991, plaintiff-respondent, an Administrative Assistant, left work from an office located on 40th Street in Manhattan to return to her residence in Ridgewood, New Jersey. Plaintiff, who was 22 years old at the time, entered the subway at approximately 5:10 P.M. via the stairway located at 40th Street and Sixth Avenue, began walking south, and entered a six-block-long pedestrian tunnel (known as the Sixth-Avenue Tunnel) which leads to the 34th Street PATH station.

As plaintiff proceeded approximately two blocks into the tunnel past the staircase which descends from 38th Street, an unknown male assailant grabbed her from behind, ripped her Walkman off and threatened to stab her if she screamed. The assailant then dragged plaintiff approximately 200 feet to an area of the tunnel where defendant-appellant New York City Transit Authority (the TA) had stored construction material, including a large metal plate which had been positioned vertically against the tunnel wall. Plaintiff was pulled behind the plate and forced to the ground still under threat of being stabbed if she made any noise. There, in a secluded area shielded by the metal plate and construction material from the sight of other rush hour passersby, plaintiff was robbed, brutally raped and beaten. After her assailant discontinued the attack, plaintiff managed to chase after him to the street level at which time the police were notified. The attacker was never apprehended.

Plaintiff commenced the underlying action by the service of a summons and complaint on or about October 9, 1991. The complaint asserts, *inter alia,* that defendant negligently failed to maintain proper security; permitted or allowed dangerous

persons to use the Sixth Avenue Tunnel; and failed to take appropriate measures to protect plaintiff. Plaintiff subsequently expanded her allegations in a bill of particulars and amended bill of particulars to assert that defendant, by storing the construction material and the metal plate against the tunnel wall, affirmatively created a dangerous condition which allowed her to be assaulted without detection. Further, plaintiff asserts that defendant created the trap in an area that was the known location of continuous, violent criminal activity.

Subsequent media accounts of the incident, as well as the TA's response revealed: that 30 felonies, including two rapes, were reported having been committed in the tunnel the previous year; that the Transit Police had recommended closing the tunnel after rapes had been perpetrated there in July and August of the previous year; and that the TA admitted to having erred in not acting upon the Transit Police recommendation, had learned from its mistake, and would close the Sixth Avenue Tunnel, which was done immediately after this incident.

Defendant joined issue and moved for summary judgment dismissing the complaint. Plaintiff cross-moved for sanctions and an order compelling disclosure. By decision and order entered September 22, 1992, the IAS Court denied defendant's motion, with leave to renew, and granted plaintiff's motion to the extent of directing defendant to comply with plaintiff's discovery demands.

In support of its motion for summary judgment, defendant Transit Authority relies on *Weiner v Metropolitan Transp. Auth.* (55 NY2d 175) and its progeny *(see, e.g., Gasset v City of New York,* 198 AD2d 12; *Crichlow v New York City Tr. Auth.,* 184 AD2d 395; *Rivera v New York City Tr. Auth.,* 184 AD2d 417).

In the *Weiner* case, the plaintiff was robbed and slashed on the wrist as she proceeded down the stairway to the platform of the 25th Street subway station after purchasing a token. The plaintiff maintained that the Transit Authority, with notice of prior incidents of robbery and assault in that particular station, failed to provide adequate police protection. The *Weiner* Court, in dismissing the complaint, ruled that absent a special relationship between the Authority and a passenger, the failure of the Transit Authority to provide police protection from assault by a third person is not actionable, such

being an exercise of a governmental function. This ruling is based on the policy that allocation of police resources for protection from criminal wrongdoing is a legislative-executive decision of the Authority in which the Authority is granted sovereign immunity from liability *(Weiner v Metropolitan Transp. Auth., supra,* at 181).

However, the *Weiner* case, which dealt strictly with a challenge concerning the allocation of police resources, is not a blanket rule and does not grant immunity in all cases to publicly owned common carriers from liability for assault against passengers by third parties *(Crosland v New York City Tr. Auth.,* 68 NY2d 165).

The Court of Appeals in *Miller v State of New York* (62 NY2d 506) made a distinction between governmental and proprietary functions relevant to liability for negligence claims against the State and held that acts of a public entity in a proprietary capacity which do not involve a legislative-executive function are not subject to governmental immunity. Proprietary functions would include the control, maintenance and repair of the premises of the Authority in its capacity as owner.

In *Weiner (supra,* at 182), the Court of Appeals specifically held that: "It is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability, not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred".

In the instant case, it is undisputed that the Authority was performing renovation work at the subject tunnel during the period in question and that construction material and other related items were placed in the tunnel as part of this project. The act of placing the construction material, debris and the metal plate at the site of the attack was purely a routine act integrally related to the renovation project undertaken by the Authority in the capacity of a proprietary function.

A municipal corporation is liable for an affirmative act which sets in motion a chain of events leading to a passenger's injury since the municipality has created a new risk of harm to the passenger *(see,* Prosser and Keaton, Torts § 56 [5th ed]; *Pittel v Town of Hempstead,* 154 AD2d 581).

As stated in *Schuster v City of New York* (5 NY2d 75, 87 [McNally, J., concurring]): " 'It is ancient learning that one

who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.' " (Quoting *Glanzer v Shepard,* 233 NY 236, 239 [Cardozo, J.].)

The record clearly shows that defendant Transit Authority had knowledge of the danger posed to the public by this long underground tunnel which has a history of over 30 felony crimes and two rapes during the year prior to the attack in issue. The Authority, with knowledge of the foregoing danger, affirmatively placed a metal plate up against the wall of the tunnel, together with other construction material and debris, thereby creating an enclosed and secluded area which would facilitate the commission of crimes in an already dangerous zone outside the sight of other passersby. The instant attack upon plaintiff may not have occurred if the metal plate and other construction material were not placed in such a haphazard manner since the attack was committed during the rush hour, at a time when there were other commuters and passengers using the tunnel. The secluded area created by the Authority in this crime-ridden tunnel invited danger to the public. The affirmative act of the Authority created a new risk of harm to the unsuspecting passengers.

When an intervening act by a third party is of such an extraordinary nature and interrupts the causal relationship between defendant's negligence and plaintiff's injury, such act will be deemed a superseding cause and may absolve defendant of liability. If, however, the intervening act by a third party is a natural and foreseeable consequence of a condition or circumstance created by defendant's act, liability will attach *(Kush v City of Buffalo,* 59 NY2d 26, 33).

The attack and rape committed upon plaintiff by a third party could be found, by a jury, to be a foreseeable consequence of the hazardous condition created by the TA's affirmative act in light of the numerous violent crimes committed in the tunnel prior to plaintiff's attack.

Plaintiff has made out a prima facie case by showing that defendant's negligence was a substantial cause of the events which resulted in the attack and injury, and therefore was sufficient to defeat defendant's summary judgment motion.

Accordingly, the order of the Supreme Court, New York County (Alfred Toker, J.), entered September 22, 1992, which denied defendant's motion for summary judgment and granted plaintiff's cross motion to compel disclosure by defendant is affirmed, without costs.

SULLIVAN, J. (dissenting). In this personal injury action against the New York City Transit Authority, plaintiff, mugged and sexually assaulted in the passageway of a subway station by an unknown assailant, alleges that the passageway should have been closed due to the history of violent crime at that location and, further, that the Authority facilitated the incident by its negligent placement of construction materials in the passageway. Apparently, a metal plate had been left standing in a vertical position, thereby creating a secluded area in which the perpetrator was able to commit the assault without fear of detection. Since, under the prevailing law in this State, the Authority, absent a special relationship with plaintiff, concededly not present here, did not owe her a duty of protection from the criminal attack of a third party *(Weiner v Metropolitan Transp. Auth.,* 55 NY2d 175), the Authority's motion for summary judgment dismissing the complaint should have been granted.

The facts, basically uncontroverted, are fairly straightforward. On March 20, 1991, plaintiff, 22 years of age, left her place of employment at approximately 5:00 P.M., entered the 6th Avenue and 42nd Street subway station on her way home and proceeded in a southerly direction toward the PATH station at 34th Street through a long passageway, sometimes referred to in the record as the Sixth Avenue tunnel. As plaintiff walked past a stairway at 38th Street, she was jumped from behind, threatened with a knife, pulled some distance behind a vertical metal plate, forced to the ground and raped and robbed. She did not yell for help because her assailant, who eventually fled with plaintiff's Walkman, $12 and some jewelry, threatened to stab her if she made a sound. At the Transit Authority's direction, the tunnel was closed the next day.*

According to media accounts of the incident, which are part of this record, there were 30 felonies, including two rapes and one case of sexual abuse, committed in the tunnel in the preceding year. Media accounts also indicate that eight months before, after another rape there, the New York City Transit Authority Police Department had recommended the tunnel's closing, a proposal which was approved by the local

---

* The Transit Authority also closed, at the same time, on an emergency basis without holding a public hearing or seeking the approval of the Metropolitan Transportation Authority, 15 other passageways and entrances located in isolated areas of stations with high crime rates and low usage.

community board but never acted upon by the Metropolitan Transportation Authority before the incident in question because, as a crime/public safety issue, it was improperly joined with service-cut issues. It is also not disputed that sometime before March 20, 1991, the Transit Authority began to store in the tunnel, near the 38th Street stairway, construction materials, including a vertically positioned metal plate, which the assailant used to shield his conduct from view.

In opposing the Transit Authority's motion for summary judgment, plaintiff argued that, though aware of the crime problem in the Sixth Avenue tunnel for some time, the Authority had taken no steps to close it or otherwise reduce the risk and, in fact, "affirmatively facilitated the rape" by storing construction materials in the secluded passageway. Summary judgment was denied on the ground that, while a municipal defendant enjoys immunity from suit if "official action involves the exercise of discretion", the parties' submissions were inadequate to permit a determination as to whether "the people responsible for placing the [construction] material" exercised "some judgment or discretion." Thus, as the court framed the issue, the Transit Authority's actions in storing construction materials in the passageway left open the question of whether it was entitled to governmental immunity for plaintiff's injuries and consequent damages. Such ruling misconstrues *Weiner (supra)*.

It is a well-established rule that, absent the existence of a special relationship between it and the claimant, a governmental entity such as the Transit Authority may not be held liable for the failure to provide adequate police protection. *(See, Weiner v Metropolitan Transp. Auth.,* 55 NY2d 175, *supra; Cuffy v City of New York,* 69 NY2d 255.) As noted in *Cuffy,* "[The] rule is derived from the principle that a municipality's duty to provide police protection is ordinarily one owed to the public at large and not to any particular individual or class of individuals." *(Supra,* at 260, citing *Moch Co. v Rensselaer Water Co.,* 247 NY 160.) Thus, a showing of a special relationship is required before a duty may be found to exist.

The rationale for the rule lies in the principle that "the allocation of police resources implicates a governmental function for which a publicly owned carrier cannot be held liable, even though a private carrier could be held liable for a similar

failure to allocate security personnel if that failure proximately resulted in a patron's sustaining injury at the hand of a third party." *(Crosland v New York City Tr. Auth.,* 68 NY2d 165, 169, citing *Weiner v Metropolitan Transp. Auth.,* 55 NY2d 175, *supra.)* Concededly, *Weiner* did not relieve publicly owned carriers from liability in every case of an assault by a third party on a passenger. As *Weiner* noted, "It is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability; not whether the agency involved is engaged generally in proprietary activity." (55 NY2d, *supra,* at 182.)

Thus, it is clear that plaintiff's claims based on the Authority's failure to take heed of its own police department's recommendation and the local community board's proposal to close the tunnel in light of the history of crimes committed there will not save this complaint since they involve no more, in essence, than an assertion of the Authority's failure to provide police protection, albeit in a situation where the specific peril was known or should have been known. That circumstance, however, does not establish a special relationship. *(See, e.g., Cuffy v City of New York,* 69 NY2d 255, *supra.)*

Since plaintiff cannot assert the existence of a special relationship, she argues that the Authority, acting in a proprietary rather than governmental capacity, and thus stripped of its immunity, affirmatively facilitated the rape by storing construction materials in the passageway, purportedly in violation of its own rule. No such rule is identified. In any event, this "premises defect" claim is no more than an argument that the passageway would have been a much safer place had there been no construction materials there. It is, in effect, the same disguised police protection argument which was rejected by this Court in *Rivera v New York City Tr. Auth.* (184 AD2d 417; *see, also, Farber v New York City Tr. Auth.,* 143 AD2d 112, 113; *Calero v New York City Tr. Auth.,* 168 AD2d 659, *lv denied* 78 NY2d 864) and, in any event, fails on the issue of proximate cause as being too speculative as a matter of law. *(Ascher v Garafolo Elec. Co.,* 113 AD2d 728, *affd* 67 NY2d 637; *see also, Khodai v New York City Tr. Auth.,* 176 AD2d 524.)

Accordingly, I would reverse and grant the Authority's motion for summary judgment dismissing the complaint.

Ross and RUBIN, JJ., concur with TOM, J.; MURPHY, P. J., and SULLIVAN, J., dissent in a separate opinion by SULLIVAN, J.

Order, Supreme Court, New York County, entered September 22, 1992, affirmed, without costs.