**Eduvigis A. GENAO, Plaintiff,**

v.

**The BOARD OF EDUCATION OF THE CITY OF NEW YORK, Defendant.**

No. 93 Civ. 5274 (DLC).

United States District Court,
S.D. New York.

March 15, 1995.

Abraham Jaros, Jaroslawicz & Jaros, New York City, for plaintiff.

Paul A. Crotty, Corp. Counsel, New York City (Barry Berger, of counsel), for defendant.

COTE, District Judge:

Plaintiff Eduvigis A. Genao ("Genao") is a New York City school teacher who was assaulted by intruders while teaching in her classroom. Genao brings this negligence action under the Court's diversity jurisdiction seeking damages in excess of $50,000 from defendant Board of Education of the City of New York (the "Board"). Before this Court is the Board's motion for summary judgment. For the reasons given below, defendant's motion is granted.

## BACKGROUND

For the purposes of this motion, the following facts are undisputed. On December 22, 1992, Genao was assaulted while teaching at P.S. 194, located at 242 West 144th Street in Manhattan. During school hours, four adult intruders, three females and one male, appeared at the door of her classroom and threatened Genao. Accusing her of having physically abused a student on the previous day, one of the female intruders assaulted plaintiff with a metal chair. Genao called for help, and, several minutes later, the school's principal, Mr. Cunningham, arrived and broke up the altercation. Soon after the principal's arrival, the sole school security guard, whose usual post was by the school's front entrance on 144th Street, also arrived at the classroom. As a result of the attack, Genao suffered injuries to her back.

At the time of the incident, P.S. 194 had two doors to the outside. The main entrance faced 144th Street, and the back entrance faced 143rd Street. The sole security guard was posted in the lobby by the main entrance. As a matter of practice, however, the guard did not question persons entering P.S. 194. Genao's classroom, located on the second-floor, was not provided with any communication device that would link her classroom with other parts of the building.

When Genao was assaulted, she was working pursuant to the 1991–95 collective bargaining agreement (the "Contract") between the teacher's union and the Board. Sections A, B, and G of Article Ten (collectively, the "Security Provision") of the Contract concern

security in schools. Section A of the Security Provision, titled "Assistance in Assault Cases," deals exclusively with post-assault procedures, including the principal's duty to assist in the investigation of assaults on teachers. Section B, titled "School Safety Plan", charges the principal with the duty of "maintaining security and safety in the school" by means of devising a "comprehensive safety plan." Under Section B, a teacher may protest "a violation of the plan as to him". Section G, titled "Identification Cards", describes an experimental program requiring staff and students in several high schools to use identification cards in order to determine the value of the cards as a device for maintaining security in the school. There is no indication, from the Contract or either party, whether P.S. 194 was selected for participation in this program.

In 1988, when Genao began teaching at P.S. 194, Cunningham told her, "Don't worry. You are in a good school." Aside from the Contract, this is the only statement or promise Genao points to with respect to security at P.S. 194.

## SUMMARY JUDGMENT

■ Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. "[T]he judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court shall conduct

the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Id.* at 250, 106 S.Ct. at 2511. When deciding a motion for summary judgment, a court must "view the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in its favor." *American Casualty Co. of Reading, Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994).

## DISCUSSION

Genao claims that the Board's negligent actions in

permitting unauthorized persons to enter the plaintiff's classroom at P.S. 194; in failing to have sufficient personnel; in failing to have proper security; in failing to monitor and control persons entering the school; in failing to provide the plaintiff with a safe place to work; in causing and creating a dangerous condition; in assuring the plaintiff of security and failing to provide it; in causing and/or permitting the plaintiff to be assaulted with a metal chair and garbage can; [and] in breaching its contract with the Teachers Association in which the plaintiff was a direct and intended beneficiary....

Complaint at 3. In its motion for summary judgment, the Board asserts that it cannot be liable to Genao because it had no actionable duty to protect Genao from the attack. In opposition, Genao asserts that summary judgment should be denied because: 1) the Board has refused to provide plaintiff with any discovery; 2) the Board breached its proprietary duty as a landlord; or 3) the Board undertook and breached a special duty to protect plaintiff.

## LACK OF DISCOVERY

■ When the opponent of a motion for summary judgment seeks discovery, she must file an affidavit pursuant to Rule 56(f), Fed.R.Civ.P., explaining:

(1) the information sought and how it is to be obtained; (2) how a genuine issue of material fact will be raised by that information; (3) what efforts the affiant has made to obtain the information; and (4) why those efforts were unsuccessful.

*Sage Realty v. Ins. Co. of North America,* 34 F.3d 124, 128 (2d Cir.1994), *citing Hudson River Sloop Clearwater, Inc. v. Department of the Navy,* 891 F.2d 414, 422 (2d Cir.1989). "Additionally, the discovery sought must be

material to the opposition of the summary judgment motion." *Id.* Plaintiff, in the affidavit of Abraham Jaros ("Jaros Affidavit"), specifies information plaintiff needs to respond fully to this motion, and asserts that the Board has refused to provide any discovery to date. Because the discovery materials relate to the alternate theories espoused by plaintiff, the materiality of these requested items will be examined more fully in the section discussing each theory.

## NEGLIGENCE

■ Both of Genao's theories of liability are for negligent acts by the Board. In order to establish a claim of negligence, plaintiff must demonstrate each of following elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985). Genao claims that the Board breached *either* its proprietary duty as landlord of the school property, or a special duty undertaken to protect plaintiff.

## GOVERNMENTAL AND PROPRIETARY DUTIES

■ Public entities such as the Board, under the doctrine of sovereign immunity, cannot generally be held liable for breach of their governmental duties. *Miller v. State of New York*, 62 N.Y.2d 506, 510, 478 N.Y.S.2d 829, 467 N.E.2d 493 (1984).[1] In its proprietary capacity as a landlord, however, the Board is held to the same principles of tort law as a private landlord. *Id.* at 511, 478 N.Y.S.2d 829, 467 N.E.2d 493. Where a public entity acts in both a propriety and governmental capacity, "it is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability," and not the general nature of the entity, that governs. *Weiner v. Met. Trans. Auth.*, 55 N.Y.2d 175, 182, 448 N.Y.S.2d 141, 433 N.E.2d 124 (1982). The entity's conduct

> may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions. This begins with the simplest matters directly concerning a piece of property for which the entity acting as landlord has a certain duty of care, for example, the repair of steps or the maintenance of doors in an apartment building. The spectrum extends gradually out to more complex measures of safety and security for a greater area and populace, whereupon the actions increasingly, and at a certain point only, *involve governmental functions, for example, the maintenance of general police and fire protection.* Consequently, any issue relating to the safety or security of an individual claimant must be carefully scrutinized to determine the point along the continuum that the [entity's] alleged negligent action falls into, either a proprietary or governmental category.

*Miller*, 62 N.Y.2d at 511–12, 478 N.Y.S.2d 829, 467 N.E.2d 493 (emphasis supplied).

■ A municipality may not be held liable for injuries resulting from the failure to provide police protection. *Cuffy v. City of New York*, 69 N.Y.2d 255, 260, 513 N.Y.S.2d 372, 505 N.E.2d 937 (1987). This is true even if the failure occurred at a public school. Thus, the provision of security in municipal public schools has repeatedly been found to be a governmental duty, rendering the school immune from liability. In *Bonner v. City of New York*, 73 N.Y.2d 930, 539 N.Y.S.2d 728,

---

1. The imposition of liability for the breach of a governmental duty would have two undesirable effects. First, a potentially crushing burden of liability would fall on the community fisc. *Weiner v. Metropolitan Transportation Auth.*, 55 N.Y.2d 175, 182, 448 N.Y.S.2d 141, 433 N.E.2d 124 (1982). *Cf. Kircher v. City of Jamestown*, 74 N.Y.2d 251, 256, 544 N.Y.S.2d 995, 543 N.E.2d 443 (1989) ("The amount of protection that may be provided is limited by the resources of the community."). Second, and perhaps more importantly, constraining the executive and legislative branches' discretionary control over public expenditures would be an improper exercise of judicial power. *Kircher*, 74 N.Y.2d at 256, 544 N.Y.S.2d 995, 543 N.E.2d 443; *Bonner v. City of New York*, 73 N.Y.2d 930, 932, 539 N.Y.S.2d 728, 536 N.E.2d 1147 (1989); *Cuffy v. City of New York*, 69 N.Y.2d 255, 260, 513 N.Y.S.2d 372, 505 N.E.2d 937 (1987); *Shinder v. State of New York*, 62 N.Y.2d 945, 946, 479 N.Y.S.2d 189, 468 N.E.2d 27 (1984); *Weiner*, 55 N.Y.2d at 181–82, 448 N.Y.S.2d 141, 433 N.E.2d 124.

536 N.E.2d 1147 (1989), the plaintiff was a teacher who was injured while supervising a playground. One of the gates to the playground was off its hinges and could not be locked, so it was plaintiff's responsibility to station himself there for the security of the students. A non-student child he had evicted from the playground returned and hit the plaintiff with a baseball bat. The plaintiff argued that the defendants, the City of New York and the Board of Education,

> were negligent in allowing the gate to remain broken, in failing to provide adequate levels of security in the schoolyard or provide proper training to teachers and persons charged with supervision during play periods, failing to assist plaintiff during the altercation, allowing intruders to enter the playground, failing to provide sufficient personnel at the broken gate to prevent their entry, and allowing the play period in the schoolyard despite the broken gate.

*Bonner*, 73 N.Y.2d at 932, 539 N.Y.S.2d 728, 536 N.E.2d 1147. The jury returned a verdict in favor of the plaintiff, and the Appellate Division affirmed without opinion. The Court of Appeals reversed, observing that

> *the provision of security against physical attacks by third parties* in circumstances as are presented here, *is a governmental function* involving policymaking regarding the nature of the risks presented, and that *no liability* arises from the performance of such a function *absent a special duty of protection.*

*Id.* (emphasis supplied).

Other cases involving security at public schools, with allegations of various failures to maintain security, have similarly ruled. *See Vitale v. City of New York*, 60 N.Y.2d 861, 470 N.Y.S.2d 358, 458 N.E.2d 817 (1983) (student assault on junior high school teacher); *Brady v. Bd. of Educ. of New York*, 197 A.D.2d 655, 602 N.Y.S.2d 892 (2d Dept.1993) (security guard failed to prevent student fight; teacher injured in intervention in student fight); *Jacobellis v. City of New York*, 197 A.D.2d 671, 671, 602 N.Y.S.2d 877 (2d Dept.1993) (teacher unable to summon security personnel due to broken intercom; teacher sustained injuries removing weapon from student); *Lasker v. City of New York*,

194 A.D.2d 646, 599 N.Y.S.2d 89 (2d Dept. 1993) (outside entrance door in disrepair; school failed to employ proper security guards; teacher injured by desk-chair unit thrown from stairwell platform by unidentified person); *Perry v. Bd. of Educ., Gouverneur Central School Dist.*, 189 A.D.2d 939, 592 N.Y.S.2d 493 (3d Dept.1993) (referee assaulted by father of student); *Marilyn S. v. City of New York*, 134 A.D.2d 583, 521 N.Y.S.2d 485 (2d Dept.) (school's inadequate key distribution system permitted intruder to enter ladies room where teacher was sexually assaulted), *aff'd*, 73 N.Y.2d 910, 539 N.Y.S.2d 293, 536 N.E.2d 622 (1989); *Weinstein v. Bd. of Educ. of New York*, 127 A.D.2d 655, 511 N.Y.S.2d 882 (2d Dept.1987) (absence of security guards from post; malfunctioning public address system; teacher injured in assault and robbery while teaching evening class); *Glick v. City of New York*, 53 A.D.2d 528, 384 N.Y.S.2d 184 (1st Dept.) (plaintiff assaulted by student in faculty ladies room of high school), *aff'd*, 42 N.Y.2d 831, 397 N.Y.S.2d 382, 366 N.E.2d 83 (1977); *Berler v. City of New York*, 152 Misc.2d 133, 584 N.Y.S.2d 709 (Sup.Ct., App. Term, 1st Dept. 1992) (school failed to repair lock on classroom door; teacher robbed and sexually assaulted in her classroom).

■ In making her claim that she was injured as a result of the Board's breach of its proprietary duty, as owner and manager of P.S. 194, Genao relies on *Miller*, 62 N.Y.2d 506, 478 N.Y.S.2d 829, 467 N.E.2d 493. In *Miller*, the New York Court of Appeals held that the State University of New York at Stony Brook, as proprietor of campus housing, was liable for breaching its duty to provide reasonable security to a university student who was raped in a university dormitory, when the school failed to keep a dormitory door locked. *Id.* at 508, 478 N.Y.S.2d 829, 467 N.E.2d 493. As *Miller* explained, where a public entity operates *housing*, it can be liable for breach of its proprietary duties: "[o]wnership and care relating to buildings with tenants has traditionally been carried on through private enterprise, specifically by landlords[,] and thus constitutes a proprietary function when performed by the State." *Id.* at 513, 478 N.Y.S.2d 829, 467 N.E.2d 493.

*Miller* itself recognized, however, that the provision of police protection, even in the area of publicly operated housing, is a governmental function for which the state has immunity. *Id.* at 512, 478 N.Y.S.2d 829, 467 N.E.2d 493. *See also Jacqueline S. v. City of New York,* 81 N.Y.2d 288, 598 N.Y.S.2d 160, 614 N.E.2d 723 (1993) (housing authority, as a landlord, owed duty to provide locks for building entrances where tenant was sexually assaulted by an intruder in the housing project). *Miller's* analysis, therefore, leads to the conclusion that the failure to provide security in a school, a traditional police function, derives from governmental, and not proprietary, duties.

█ Non-housing cases finding a public entity liable for breach of a proprietary duty are also distinguishable from the situation at hand. *See Clinger v. New York City Transit Auth.,* 201 A.D.2d 236, 615 N.Y.S.2d 369 (1st Dept.1994) (plaintiff attacked in subway tunnel; City created an enclosed and secluded area with its placement of construction materials, creating a trap in a known location of continuous and violent criminal activity), *lv. app. granted,* 208 A.D.2d 1182, 618 N.Y.S.2d 526 (1994); *Platovsky v. City of New York, et al.,* 199 A.D.2d 373, 605 N.Y.S.2d 368 (2d Dept.1993) (where medical resident who had been sleeping in "on call" room was stabbed by intruder in city hospital, court held, without analysis, that duty to provide minimal security measures at city hospital was proprietary). In only one case has a New York court found that a breach of proprietary duty caused injuries to a teacher at a public school. In *Rubino v. City of New York, et al.,* 114 A.D.2d 243, 498 N.Y.S.2d 831 (1st Dept.1986), a teacher was injured by a metal object that was hurled into a school yard by an unknown person. While observing that the provision of police or security guards would be a governmental duty, the court held that the failure to issue warnings "with respect to the known and foreseeable dangers posed by incidents of this type to those, such as plaintiff, who could be expected to use the school yard property controlled by defendant" was a violation of a proprietary duty. *Id.* at 247, 498 N.Y.S.2d 831. The court specifically distinguished those cases in which

the underlying thrust of the claim ... was the failure to provide adequate security in the general 'police protection' sense of preserving law and order and *controlling the activities of criminal wrongdoers.* This, of course, *has classically been considered a 'governmental function'* involving the allocation and deployment of available police resources.

114 A.D.2d at 246, 498 N.Y.S.2d 831 (emphasis supplied). The distinction made in *Rubino* is presumably between controlling the criminal actors, which is a governmental duty, and controlling the *effects* of foreseeable criminal activity, which can be proprietary where such effects are known and foreseeable. The case at hand does not concern controlling the effects of the assault on Genao, but rather on preventing the assault itself. The Board's duty to protect her from such an assault is therefore governmental in nature.

█ The types of information plaintiff seeks to discover on this theory do not change the outcome. Plaintiff requests:

[ (1) ] the specific history of criminal activity in the defendant's school; [ (2) ] the precise nature of the security equipment, including locks, gates, fences, intercom, telephones, surveillance cameras or metal detectors that might or might not have been installed at the school; [ (3) ] the maintenance history and practices of the defendant with respect to the security equipment which caused the school's security measures to be ineffectual on the day plaintiff was assaulted.

Jaros Affidavit at 5. Genao was injured as a result of an attack by "criminal wrongdoers" who entered her classroom and assaulted her. The gravamen of her claim is that the Board failed to have a security system that would prevent unauthorized persons from entering her classroom. All of the items requested go to the failure to provide such a security system. Consequently, they all relate to the Board's governmental duties and the requested discovery would not save plaintiff's claim.

Summary judgment on Genao's claim that the Board breached a proprietary duty is therefore granted in favor of the Board.

## SPECIAL DUTIES

■■■ Genao claims that even if the provision of security in a public school is a governmental function, the Board assumed a special duty to protect her. It is well established that the breach of a governmental duty to provide security does not give rise to liability except in a "narrow class of cases" where a public entity assumed a special duty to protect an individual. *Cuffy,* 69 N.Y.2d at 260, 513 N.Y.S.2d 372, 505 N.E.2d 937. This rule of law rests on the principal that a duty to provide police protection ordinarily is one owed to the community at large and not to a specific person. Nevertheless, when a governmental body voluntarily undertakes to act on behalf of a particular person and that person detrimentally relies on that promise, a special duty is created. *Kircher v. City of Jamestown,* 74 N.Y.2d 251, 256, 544 N.Y.S.2d 995, 543 N.E.2d 443 (1989). The four elements of this special duty are:

> (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

*Cuffy,* 69 N.Y.2d at 260, 513 N.Y.S.2d 372, 505 N.E.2d 937. *See also Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1055–56 (2d Cir. 1990).

■■■ Genao claims that both the Contract and Cunningham's statement were affirmative assumptions of a special duty to protect her. Neither the statement of Cunningham, nor the Contract as a whole, however, constitute an affirmative assumption of a duty to protect the plaintiff. The only statement or "promise" plaintiff alleges to have been made to her personally was the principal's statement, "Don't worry. You are in a good school." This statement, on its face, is not a promise to do anything. By making this statement, Cunningham did not undertake to perform any particular duties in order to protect plaintiff from a specific danger. Indeed, his statement cannot reasonably be construed to assume a duty to do anything at all. *Cf. Cuffy,* 69 N.Y.2d at 259, 513 N.Y.S.2d 372, 505 N.E.2d 937 (police statements telling plaintiff not to worry and assuring an arrest would be made "first thing in the morning" created special duty); *Sorichetti v. City of New York,* 65 N.Y.2d 461, 470–71, 492 N.Y.S.2d 591, 482 N.E.2d 70 (1985) (special duty found where police made statements to infant plaintiff's mother indicating that a patrol car would be sent out to retrieve her daughter); *DeLong v. County of Erie,* 89 A.D.2d 376, 455 N.Y.S.2d 887 (4th Dept.) (statements by 911 operator that help was on its way created special duty to protect plaintiff), *aff'd,* 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717 (1983). *See also Raucci v. Town of Rotterdam,* 902 F.2d 1050 (2d Cir.1990) (statements by police that they could "do more" than arrest plaintiff's husband, and that they were still working on evidence, created special duty to protect plaintiff).

■■■ Plaintiff's general allegations that the Contract may create a special duty are also unsuccessful. Although the Contract does require each principal to develop a comprehensive safety plan, this requirement does not create a special duty to Genao. *Vitale,* 60 N.Y.2d 861, 863, 470 N.Y.S.2d 358, 458 N.E.2d 817. *See also Perry,* 189 A.D.2d at 940, 592 N.Y.S.2d 493 (handbook on safety did not single out particular class for protection and therefore did not create special duty); *Pascarella v. City of New York,* 146 A.D.2d 61, 69, 538 N.Y.S.2d 815 (1st Dept.) (noting that in the few cases where a special duty is found to exist, the claimant was never an employee of the defendant municipality), *lv. app. den.,* 74 N.Y.2d 610, 546 N.Y.S.2d 554, 545 N.E.2d 868 (1989); *Pollock v. City of New York,* 145 A.D.2d 550, 552, 536 N.Y.S.2d 103 (2d Dept.1988) (formation of task force to respond to assaults on hospital personnel not specially intended to benefit the murdered physician).

Genao asserts that there may be provisions in the Contract, about which Genao does not yet know, which indicate that the security plan "was designed or intended specially for [her] benefit or that of other teachers in the school." *Vitale*, 60 N.Y.2d at 863, 470 N.Y.S.2d 358, 458 N.E.2d 817. However, Genao's lack of even cursory knowledge about any such provisions is fatal to her claims, due to the fact that Genao must plausibly allege justifiable reliance.

Reliance by an injured party is as critical in establishing the existence of a 'special relationship' as is the municipality's voluntary affirmative undertaking of a duty to act because it is that element that "provides the essential causative link between the 'special duty' assumed by the municipality and the alleged injury." *Kircher*, 74 N.Y.2d at 258, 544 N.Y.S.2d 995, 543 N.E.2d 443 (quoting *Cuffy*, 69 N.Y.2d at 261, 513 N.Y.S.2d 372, 505 N.E.2d 937).

When the plaintiff cannot demonstrate that she knew of the assumption of a special duty, then she cannot demonstrate reliance upon that assumption. Thus, lack of knowledge of the assumption of a duty precludes a showing of justifiable reliance. *See, e.g., Kircher*, 74 N.Y.2d at 258, 544 N.Y.S.2d 995, 543 N.E.2d 443 (although promise of protection was made, no justifiable reliance where plaintiff could not have known of this promise); *Cuffy*, 69 N.Y.2d at 262, 513 N.Y.S.2d 372, 505 N.E.2d 937 (no justifiable reliance where no indication that particular plaintiff "even knew of the promise of protection that his father had received").

The same is true of the information Genao requests in discovery. In order to establish that there was a special duty here, plaintiff requests:

[ (1) ] the nature of any warnings given by the defendant to the plaintiff concerning the history of criminal activity in the school or the risks involved in teaching there[; (2) ] any conversations about security or crimes in the school between the plaintiff and representatives of the defendant[; (3) ] information with respect to commitments made by school personnel to protect plaintiff, or the contractual commitments which the defendant had made with the plaintiff's union, to which plaintiff was a direct beneficiary.

In order to defeat summary judgment because of the lack of discovery, Genao must show that the information she seeks is *material*. The only material warnings, conversations, or commitments to Genao *must* be ones that were *known to*, and *relied upon by*, her. Because she is unaware of them, it is impossible for her to have relied upon them to her detriment. They are therefore not material and cannot preclude summary judgment.

Because this Court finds that neither the statement by Cunningham nor the Contract reflect the assumption of a special duty by the board, and that any other potential assumptions are unknown to plaintiff and therefore were not relied upon by her, it is not necessary for the Court to address the remaining elements of a "special duty." Summary judgment is therefore awarded to the Board on Genao's "special duty" claim.

### CONCLUSION

The Board's motion for summary judgment is accordingly granted in full.

SO ORDERED: