OPINION OF THE COURT
Thomas V. Polizzi, J.
Motion by plaintiff to compel defendants to comply with plaintiffs supplemental demand for discovery and inspection; and cross motion by defendants for summary judgment dismissing the complaint or, in the alternative, for a protective order with regard to plaintiffs supplemental demand for discovery and inspection.
It is ordered that the motion by plaintiff to compel defendants to comply with the supplemental demand for discovery and inspection is denied as moot and the cross motion by defendants for summary judgment is granted.
This action arises out of an alleged assault on plaintiff, an interim acting assistant principal at IS 238 in Queens County, on November 17, 1994, by Larry Blanton, a parent of a student at the school. At the time of the incident, parent-teacher conferences were being held at the school. The evidence in the record indicates that plaintiff rushed, to the deans’ offices in room 325 after receiving a call on her walkie-talkie that an emergency situation was occurring there. When plaintiff arrived at the scene, she observed a seventh grade teacher, Daniel Hennessy, standing against a wall and Mr. Blanton standing approximately 10 inches away from Mr. Hennessy, shouting obscenities at him. Plaintiff then placed an emergency call on her walkie-talkie for all units to respond to the situation.
Subsequently, Mr. Hennessy left the room with Mr. Palledino, another assistant principal. According to plaintiff, Mr. Blanton was still shouting out obscenities at this time, so she closed the door to the office, hoping to talk to Mr. Blanton and calm him down. At her examination before trial, plaintiff testified that at this point, Mr. Blanton cursed at her and lunged at her quickly, pinning her against the door. Plaintiff testified that while she was against the door, she made an emergency 911 call on her walkie-talkie, but over the walkietalkie, she heard Mitchell Weiner, the administrative assistant principal of the school, say “cancel that call.” Plaintiff stated that Mr. Blanton then grabbed her by the collar of her blazer, tossed her into the wall, and in the process, her hand was cut.
Plaintiff thereafter filed a criminal complaint against Mr. Blanton, and on January 27, 1995, plaintiff obtained an order *312 of protection against him, which was to remain in effect until March 9, 1995. On March 6, 1995, plaintiff learned that Mr. Blanton was in the school on March 3, 1995 to pick up his son. Plaintiff stated that the discovery that Mr. Blanton was in the school caused her to suffer posttraumatic stress syndrome and ultimately led to her being granted accidental disability retirement on August 28, 1996.
Plaintiff commenced the instant personal injury action alleging that defendants were negligent by, inter alia, failing to properly implement and enforce school security and visitor screening procedures on November 17, 1994. The complaint, which contains nine causes of action, also alleges that defendants negligently permitted Mr. Blanton to enter the school premises on March 3, 1995 in violation of the order of protection, causing plaintiff to suffer emotional distress and anxiety. The complaint further alleges that defendants attempted to prevent plaintiff from pursuing her contractual and administrative remedies and sought to deny plaintiff a line of duty injury. The complaint further asserts that the defendants violated the Education Law, the collective bargaining agreement between the Board of Education and various teachers’ unions and the New York and United States Constitutions. The instant motion and cross motion ensued.
Generally, a public entity is immune from negligence claims arising out of the performance of its governmental functions (Kircher v City of Jamestown, 74 NY2d 251, 255; Bonner v City of New York, 73 NY2d 930, 932; Blanc v City of New York, 223 AD2d 522, 523; Lasker v City of New York, 194 AD2d 646, 647; Weinstein v Board of Educ., 127 AD2d 655, 656). Where, however, a public entity acts in a proprietary capacity as a landlord, it is subject to the same principles of tort law as is a private landlord (Bonner v City of New York, supra, 73 NY2d, at 932; Miller v State of New York, 62 NY2d 506, 511; Marilyn S. v City of New York, 134 AD2d 583, 584, affd 73 NY2d 910). While the line between proprietary and governmental functions is not always clearly drawn, the provision of adequate police protection has long been considered a governmental function that is better left to the discretion of policy makers (Kircher v City of Jamestown, supra, 74 NY2d, at 256; Cuffy v City of New York, 69 NY2d 255, 260; Miller v State of New York, supra, 62 NY2d, at 512; Riss v City of New York, 22 NY2d 579, 583; Weinstein v Board of Educ., supra, 127 AD2d, at 656; Bass v City of New York, 38 AD2d 407, 411, affd 32 NY2d 894). The government is in the best position to determine how the *313 limited resources of police protection should be allocated in the community (Riss v City of New York, supra, 22 NY2d, at 582). Indeed, there are no powers which can be imposed upon a municipality which more clearly “constitute a function of general government than the power and duty to maintain a police force”. (Wilcox v City of Rochester, 190 NY 137, 142.)
There is a narrow exception, however, which permits liability to be imposed upon a public entity for actions arising out of governmental functions where a “special relationship” exists between the entity and the claimant (Cuffy v City of New York, supra, 69 NY2d, at 260; Miller v State of New York, supra, 62 NY2d, at 510; De Long v County of Erie, 60 NY2d 296, 304; Feder v Board of Educ., 147 AD2d 526). A “special relationship” consists of the following elements: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking. (Cuffy v City of New York, supra, 69 NY2d, at 260; Ennis v Northeast Mines, 200 AD2d 553, 554; Pollock v City of New York, 145 AD2d 550, 552.)
Applying the above principles to the matter at hand, the court first finds that a governmental function is implicated here since plaintiff alleges that defendants failed to implement proper security procedures. Thus, liability will only be imposed if plaintiff can establish the existence of a special relationship. However, the evidence in the record fails to indicate the existence of such a relationship.
Plaintiff contends that a special relationship existed here since three security guards were stationed on the school premises and 17 walkie-talkies were distributed to school officials, including plaintiff. Plaintiff asserts that the distribution of the walkie-talkies lulled her into foregoing other available avenues of protection on the day of the incident. Plaintiff also argues that defendants assumed a special duty towards her since defendant Anastasio, the principal of IS 238, repeatedly stressed that security was a paramount function of staff members and assigned teachers to patrol the halls of the school. The court finds plaintiff’s arguments to be without merit.
Plaintiff has failed to establish that the actions of defendants constituted an affirmative assumption of a duty to protect her. There is no evidence here that the walkie-talkies *314 were distributed solely for the benefit of plaintiff or a limited class of assistant principals of which she was a member (see, Corcoran v Community School Dist. 17, 114 AD2d 835). Moreover, the issuance of security and visitor screening procedures by defendants is insufficient to establish a special relationship as there is no evidence that these procedures were instituted merely for plaintiff’s protection (see, Vitale v City of New York, 60 NY2d 861, 863). Indeed, plaintiff testified at her examination before trial that one of the functions of the assistant principal was to ensure the safety of both the students and the staff at the school. In addition, the safety plan issued by IS 238 clearly states that one of the objectives is to “provide a safe and secure environment in the school for all students and members of the school staff.” Therefore, the plan does not support a finding that plaintiff was to be treated differently from the students or other personnel of the school (see, Perry v Board of Educ., 189 AD2d 939, 940). Thus, plaintiff has failed to submit any evidence raising an issue of fact as to the existence of a special relationship (Zuckerman v City of New York, 49 NY2d 557, 562).
Plaintiff also contends that she suffered a recurrence of post-traumatic stress syndrome and was forced to take an accidental disability retirement because defendants permitted Mr. Blanton to enter the school on March 3, 1995, in violation of her order of protection. These grounds, however, do not provide a basis for imposing liability on defendants. Courts have generally been reluctant to allow recovery for purely psychic injuries (Gerson v Giorgio Sant'Angelo Collectibles, 176 Misc 2d 388). However, it has been recognized that freedom from mental distress is a protected interest in the State and problems of vexatious suits and fictitious claims should not preclude meritorious claims with “some guarantee of genuineness in the circumstances of the case.” (Ferrara v Galluchio, 5 NY2d 16, 21.) While physical injury is no longer a necessary component for a cause of action for negligent infliction of emotional distress, a plaintiff must demonstrate that defendant breached a duty owed to her which either endangered plaintiff s physical safety or caused the plaintiff to fear for her safety (Losquadro v Winthrop Univ. Hosp., 216 AD2d 533, 534; Lancellotti v Howard, 155 AD2d 588, 589; Thomas v Supermarkets Gen. Corp., 154 Misc 2d 828, 831).
In the instant case, defendant Anastasio testified at his examination before trial that he was aware that plaintiff obtained an order of protection against Mr. Blanton and alerted *315 various school officials, such as security officers, assistant principals, and deans, to the existence of such order. It is undisputed that on March 3, 1995, Mr. Blanton came to the general office of IS 238 on the main floor to pick up his son, who had been injured in his physical education class, in violation of the order of protection. While defendants may have breached a duty owed to plaintiff, there is no evidence that such breach endangered plaintiffs physical safety or caused her to fear for her safety. Indeed, plaintiff did not see Mr. Blanton on March 3 and did not even learn that Mr. Blanton was on school property until March 6, three days after the incident. Mr. Blanton arrived at the school to pick up his son, and there is absolutely no evidence that he intended to harm plaintiff. Plaintiff has failed to demonstrate that she was exposed to an unreasonable risk of harm, such that would support a finding of negligent infliction of emotional distress.
Plaintiffs remaining allegations must be dismissed as they fail to state a cause of action. Although on a motion to dismiss a complaint for failure to state a cause of action, the narrow question is not whether plaintiff should ultimately prevail in the litigation but whether the complaint states a cognizable cause of action (Becker v Schwartz, 46 NY2d 401, 408), the allegations in the complaint cannot be vague and conclusory (Stoianoff v Gahona, 248 AD2d 525; Washington Ave. Assocs. v Euclid Equip., 229 AD2d 486, 487). Plaintiffs remaining causes of action here consist solely of vague and conclusory allegations.
In light of the above determination, plaintiffs motion to compel defendants to comply with plaintiffs supplemental demand for discovery and inspection is denied as moot.