OPINION OF THE COURT
Phyllis Orlikoff Plug, J.
Ordered that the motions and cross motion are consolidated for the purpose of disposition and are determined as follows:
On December 19, 2002, between 9:00 p.m. and 10:00 p.m., plaintiff was the victim of a violent sexual assault and robbery. The incident began when a group of men attacked plaintiff and her boyfriend as they were walking along a ramp from Flushing Meadow Park to the Shea Stadium/Willets Avenue subway station. Plaintiff and her companion were assaulted, and plaintiff was raped, near the entrance to the Long Island Rail Road (LIRR) Shea Stadium station. Following the initial attack, plaintiff was dragged down a stairway onto the train tracks, and then taken to what she has described as a plastic tent in the woods alongside the tracks. There, she was raped again before the city police arrived in response to her boyfriend’s 911 call and rescued her. The perpetrators identified the tent to plaintiff as their house. The tent, or shanty, where plaintiff was found was located on Metropolitan Transportation Authority (MTA)/ LIRR property referred to as the LIRR right-of-way. Five perpetrators, including four homeless and undocumented males who lived in makeshift shanties at the subject location, were convicted of violent felonies including rape, robbery and assault. Plaintiff commenced this action to recover damages alleging that the negligence of defendants proximately caused her injuries and further seeking damages for defendants’ alleged failure to report the criminal history and presence of known illegal aliens to the United States Immigration and Naturalization Service.
*938 Liability for the failure to maintain property in a reasonably safe condition in view of all the circumstances, including the failure to maintain minimal security measures (see Miller v State of New York, 62 NY2d 506 [1984]; Nallan v HelmsleySpear, Inc., 50 NY2d 507 [1980]), is predicated upon ownership, occupancy, control or special use of the property. (See Comack v VBK Realty Assoc., Ltd., 48 AD3d 611 [2008]; Casale v Brook-dale Med. Assoc., 43 AD3d 418 [2007].) The evidence demonstrates that no part of the attack suffered by plaintiff occurred on property owned, occupied, controlled or put to special use by New York City Transit Authority (NYCTA). Thus, without reaching any other defenses raised, NYCTA cannot be held liable to plaintiff for negligence. (Id.; see also Brown v Congel, 241 AD2d 880 [1997].)
The negligence alleged against the City derives from the City’s exercise of its governmental function of providing security and police protection to members of the general public. (See Price v New York City Hous. Auth., 92 NY2d 553 [1998]; Clinger v New York City Tr. Auth., 85 NY2d 957 [1995]; Marilyn S. v City of New York, 134 AD2d 583 [1987], affd 73 NY2d 910 [1989].) A public entity cannot be held liable for the negligent performance of a governmental function unless the injured party has established a special relationship with the entity and, thus, created a specific duty to protect that individual. (See Cuffy v City of New York, 69 NY2d 255, 260 [1987]; Miller v State of New York, supra; Marilyn S. v City of New York, supra; Doe v Town of Hempstead Bd. of Educ., 18 AD3d 600 [2005].) No such special relationship has been alleged by plaintiff or demonstrated in the record. Therefore, the City is entitled to dismissal of the negligence claim against it. (See Clinger v New York City Tr. Auth., supra; Harris v City of New York, 40 AD3d 701 [2007]; Petkevich v MTA, 38 AD3d 513 [2007].)
Where a public entity acts in a proprietary capacity as a property owner or landlord, it owes the same duty to maintain its property as a private landowner. (See Miller v State of New York at 511, 513.) Plaintiff asserts that her negligence claim against defendants MTA/LIRR is based not on the failure to provide security but on the breach of the duty owed as a property owner to maintain the premises in a safe condition by failing to remove the shantytown inhabited by homeless persons from the LIRR right-of-way. Despite this attempt to frame the potential liability of MTA/LIRR as arising from a proprietary function, the claim against MTA/LIRR also fails due to the immunity vested *939 in a governmental or quasi-governmental entity acting in a governmental role.
While concededly responsible for certain proprietary functions, defendants MTA and its subsidiary, LIRR, are public benefit corporations and by statute are regarded as performing a governmental function in carrying out their corporate purpose and exercising the powers granted by statute. (Public Authorities Law §§ 1263, 1264 [2]; § 1266 [5].) The conduct of a public entity with a dual role falls along a continuum of responsibility to individuals deriving from its governmental and proprietary functions. (See Sebastian v State of New York, 93 NY2d 790, 793-794 [1999]; Clinger v New York City Tr. Auth., supra; Miller v State of New York at 511-512.) The continuum begins at one end with the purest proprietary matters such as simple maintenance and repair, and extends gradually out to purely governmental functions such as police protection. (Id.) When the liability of such an entity is at issue,
“[i]t is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability, not whether the agency is engaged generally in proprietary activity or is in control of .the location in which the injury occurred.” (Weiner v Metropolitan Transp. Auth., 55 NY2d 175, 182 [1982].)
In this instance, although MTA/LIRR owned and/or controlled the property where the homeless encampment had been created, MTA/LIRR acted both in a proprietary capacity as landowner and at the same time in a governmental capacity as to other matters such as police protection. (See Sebastian v State of New York, supra.) The act or omission out of which plaintiff s injury allegedly occurred involved the implementation of the homeless policy devised by MTA/LIRR. The evidence proffered establishes that the policy decisions made by MTA management concerning the response to the condition of homelessness in the subject area resulted in a contractual relationship with Gouverneur Hospital for a social services program, known as MTA Connections, to reach out to homeless persons. The MTA Connections workers were at times assisted by MTA police officers. Such policy decisions regarding whether to eject the homeless and/or to conduct social service intervention are at the governmental end of the continuum and cannot be the basis of a negligence claim in the absence of a special relationship. (See *940 Lieberman v Port Auth. of N.Y. & N.J., 132 NJ 76, 94, 622 A2d 1295, 1304 [1993]; see generally Sebastian v State of New York, supra; Miller v State of New York, supra.)
Plaintiff’s claim involving defendants’ failure to report the presence of illegal aliens to the federal authorities is insufficient as a matter of law. The claim appears to be an attempt to assert a private right of action for violation of section 642 of the Illegal Immigration Reform and Immigrant Responsibility Act (8 USC § 1373). However, while said provision prohibits state and local governments from placing restrictions on the reporting of immigration status, it does not impose an affirmative duty to make such reports. Furthermore, even assuming the City breached some statutory duty through its Executive Order governing employees’ actions, the facts herein do not warrant recognizing a private right of action under 8 USC § 1373. The statute does not express an intent for a private litigant to have a cause of action for its violation. A private right of action may be fairly implied only when the plaintiff is one of the class for whose particular benefit the statute was enacted and a right of action would be clearly in furtherance of the legislative purpose. (See Sheehy v Big Flats Community Day, 73 NY2d 629, 633 [1989]; CPC Intl. v McKesson Corp., 70 NY2d 268 [1987]; Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 325 [1983].) These prerequisites are lacking here. In any event, a conclusion that the assault on plaintiff would have been prevented had defendants reported the presence of homeless, illegal aliens to the federal authorities is too speculative to sustain a cause of action.
Plaintiff cannot defeat summary judgment on the ground that further discovery is needed. (CPLR 3212 [f].) No evidentiary basis has been offered to suggest that additional discovery would lead to relevant evidence necessary to oppose defendants’ meritorious grounds for summary judgment. (See Panasuk v Viola Park Realty, LLC, 41 AD3d 804 [2007]; Wyllie v District Attorney of County of Kings, 2 AD3d 714 [2003].) Moreover, a party may not oppose summary judgment with an argument that further discovery is necessary when any incomplete discovery is due to the party’s own inaction in moving to compel discovery in a timely manner. (See Meath v Mishrick, 68 NY2d 992, 994 [1986]; Matuszak v B.R.K. Brands, Inc., 23 AD3d 628 [2005]; Household Bank [SB], N.A. v Mitchell, 12 AD3d 568 [2004].) Here, despite the *941 detailed schedule for the completion of discovery and for making summary judgment motions set forth in a post-note of issue stipulation that was so ordered by Justice Ritholtz on December 22, 2006, plaintiff only moved to compel compliance in response to defendants’ summary judgment motions, approximately three months after the City and MTA/LIRR had served responses to the supplemental demand directed to them. (See Matuszak v B.R.K. Brands, Inc., supra.)
Accordingly, the applications by defendants for summary judgment dismissing the complaint are granted. The cross motion by plaintiff is denied.