■ JANE DOE, Appellant, v CITY OF NEW YORK et al., Respondents. [890 NYS2d 548]—

In an action to recover damages for personal injuries, the plaintiff appeals, as limited by her brief, from so much of an order of the Supreme Court, Queens County (Flug, J.), entered April 8, 2008, as granted that branch of the motion of the defendants Metropolitan Transportation Authority and Long Island Railroad which was for summary judgment dismissing the complaint insofar as asserted against them, granted that branch of the separate motion of the defendant MTA/New York City Transit Authority which was for summary judgment dismissing the complaint insofar as asserted against it, and denied her cross motion to compel discovery.

Ordered that the order is affirmed insofar as appealed from, with one bill of costs to the defendants appearing separately and filing separate briefs.

On December 19, 2002 as the plaintiff and her boyfriend were walking from Flushing Meadows Corona Park to the Shea Stadium-Willets Point subway station of the Number 7 subway line, they were attacked by a group of homeless men. The plaintiff and her boyfriend were initially accosted by the homeless men on a ramp near the Shea Stadium station of the defendant Long Island Railroad (hereinafter LIRR), close to an LIRR ticket booth. The homeless men punched the plaintiff's boyfriend and threw him to the ground. They hit the plaintiff and raped her on the ramp. The plaintiff was then dragged down a flight of stairs, toward outdoor train tracks, and was taken to an encampment in the woods where the homeless men lived. The homeless men raped the plaintiff again in the encampment. When the plaintiff heard police officers nearby, she escaped the encampment and ran toward the officers.

The defendants Metropolitan Transportation Authority (hereinafter the MTA) and LIRR (hereinafter together MTA/LIRR) were aware of homeless individuals residing on their property. As a result, in 1996 the MTA/LIRR, together with other state agencies, created a social service outreach program, which was designed to assist homeless individuals in obtaining housing. As

part of the homeless outreach program, the homeless individuals residing in the area where the plaintiff was assaulted and raped had been offered assistance, but they refused to go to a shelter.

The plaintiff commenced this action against, among others, the MTA, the LIRR, and the defendant MTA/New York City Transit Authority (hereinafter the Transit Authority), alleging that they were negligent in failing to maintain their premises in a reasonably safe condition.

Public entities are immune from negligence claims arising out of the performance of their governmental functions unless an injured person demonstrates the existence of a special relationship with the entity, which would create a specific duty to protect that individual, and the individual relied on the performance of that duty (*see Miller v State of New York,* 62 NY2d 506, 510 [1984]). Where the public entity serves a dual proprietary and governmental role, the analysis involves determining where, along the spectrum of proprietary and governmental functions, the defendant's alleged negligence falls (*see Sebastian v State of New York,* 93 NY2d 790, 793-794 [1999]; *Miller v State of New York,* 62 NY2d at 512). At one end of the spectrum are purely governmental functions "undertaken for the protection and safety of the public pursuant to the general police powers" (*Sebastian v State of New York,* 93 NY2d at 793 [internal quotation marks omitted]). These functions include the exercise of police and fire powers (*see Miller v State of New York,* 62 NY2d at 511-512). At the other end of the spectrum lie proprietary functions in which governmental activities essentially substitute for, or supplement, "traditionally private enterprises" (*Sebastian v State of New York,* 93 NY2d at 793 [internal quotation marks omitted]). These activities include the exercise of maintenance and repair powers traditionally performed by private entities, such as a landlord (*see Sebastian v State of New York,* 93 NY2d at 793; *Miller v State of New York,* 62 NY2d at 512; *Kadymir v New York City Tr. Auth.,* 55 AD3d 549, 551 [2008]). When a public entity acts in a proprietary capacity as a landlord, it is subject to the same principles of tort law as is a private landlord (*see Miller v State of New York,* 62 NY2d at 511). To determine where along the spectrum the alleged negligence lies, "[i]t is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability, not whether the agency involved is engaged generally in proprietary activity or is in control of the location in which the injury occurred" (*Weiner v Metropolitan Transp. Auth.,* 55 NY2d 175,

182 [1982]; *see Kadymir v New York City Tr. Auth.*, 55 AD3d at 551-552).

The Supreme Court properly granted that branch of the MTA/LIRR's motion which was for summary judgment dismissing the complaint insofar as asserted against them. The gravamen of the plaintiff's complaint against the MTA/LIRR is that they failed to remove the homeless encampment and homeless individuals from their property, and failed to consider the safety problems associated with the homeless outreach program. The act or omission complained of, therefore, lies at the governmental function end of the spectrum (*see Clinger v New York City Tr. Auth.*, 85 NY2d 957 [1995]). The MTA/LIRR made a policy decision to address the issue of homelessness by employing a social outreach program, rather than by forcibly removing homeless individuals from their property. This was a discretionary governmental decision, for which there can be no liability (*see McLean v City of New York*, 12 NY3d 194, 203 [2009]; *Lieberman v Port Auth. of N.Y. & N.J.*, 132 NJ 76, 94, 622 A2d 1295, 1304 [1993]). Consequently, the plaintiff's cause of action alleging negligence against the MTA/LIRR must fail (*see McLean v City of New York*, 12 NY3d at 199).

Furthermore, the Supreme Court properly rejected the plaintiff's contention that facts essential to justify opposition to that branch of the MTA/LIRR's motion may exist upon further discovery (*see* CPLR 3212 [f]). Accordingly, the Supreme Court properly denied the plaintiff's cross motion to compel discovery. The plaintiff failed to offer an evidentiary basis to suggest that discovery may lead to relevant evidence (*see Panasuk v Viola Park Realty, LLC*, 41 AD3d 804, 805 [2007]; *Ruttura & Sons Constr. Co. v Petrocelli Constr.*, 257 AD2d 614, 615 [1999]). Moreover, the plaintiff filed a note of issue, failed to demand additional discovery within 20 days of the depositions as provided in the parties' discovery stipulation, and did not make any application to compel discovery until she cross-moved in opposition to the MTA/LIRR's motion. In such an instance, a claim of incomplete discovery will not defeat a prima facie showing of entitlement to summary judgment (*see Guarino v Mohawk Containers Co.*, 59 NY2d 753 [1983]; *Matuszak v B.R.K. Brands, Inc.*, 23 AD3d 628 [2005]).

The Supreme Court also properly granted that branch of the motion of the Transit Authority which was for summary judgment dismissing the complaint insofar as asserted against it. The Transit Authority demonstrated, prima facie, that it did not own or have a duty to maintain the area where the plaintiff was assaulted and raped (*see Raffile v Tower Air*, 264 AD2d 721

[1999]). In opposition, the plaintiff failed to raise a triable issue of fact.

The plaintiff's remaining contention is not properly before this Court. Dillon, J.P., Dickerson, Belen and Roman, JJ., concur. [*See* 19 Misc 3d 936.]