◼ THEODORE GRANATA, JR., as Executor of CONCETTA RUSSO CARRIERO, Deceased, et al., Respondents, v CITY OF WHITE PLAINS, Appellant. [993 NYS2d 47]—

In an action, inter alia, to recover damages for negligence and wrongful death, the defendant appeals, as limited by its brief, from so much of an order of the Supreme Court, Westchester

County (Lefkowitz, J.), entered January 8, 2013, as denied that branch of its motion which was for summary judgment dismissing the cause of action alleging failure to maintain the subject premises in a reasonably safe condition.

Ordered that the order is affirmed insofar as appealed from, with costs.

The plaintiffs commenced this action, inter alia, to recover damages for negligence and wrongful death after Concetta Russo Carriero was attacked and killed in a parking garage owned, operated, and maintained by the defendant City of White Plains. The City's Department of Parking was responsible for the operation and maintenance of the subject parking garage. The decedent rented a monthly parking space from the City, and was required to park on the seventh floor of the garage in an area designated for monthly customers. The City moved for summary judgment dismissing the complaint. The Supreme Court denied that branch of the City's motion which was for summary judgment dismissing the cause of action alleging a failure to maintain the subject premises in a reasonably safe condition, concluding that the City acted in a proprietary capacity in owning and operating the parking garage and, thus, had a duty to take minimal precautions to protect the decedent from foreseeable harm. The City appeals.

The City "may not be held liable to a person injured by the breach of a duty owed to the general public, such as a duty to provide police protection, fire protection or ambulance services" (*Etienne v New York City Police Dept.*, 37 AD3d 647, 649 [2007]). The City is not, however, immune from claims arising out of the performance of proprietary functions (*see Applewhite v Accuhealth, Inc.*, 21 NY3d 420 [2013]). A proprietary function is one in which the governmental activities "essentially substitute for or supplement 'traditionally private enterprises' " (*Sebastian v State of New York*, 93 NY2d 790, 793 [1999], quoting *Riss v City of New York*, 22 NY2d 579, 581 [1968]; *see Miller v State of New York*, 62 NY2d 506, 511-512 [1984]).

The security deficiencies alleged by the plaintiffs do not involve governmental functions or arise out of a pure "exercise of discretion . . . with respect to [overall] security measures and the deployment of limited police resources" (*Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428, 455 [2011]). The instant matter does not involve allegations of, for example, the lack of patrol cars or officers on foot patrolling the garage and the lack of general police protection (*compare Clinger v New York City Tr. Auth.*, 85 NY2d 957, 959 [1995]; *Weiner v Metropolitan Transp. Auth.*, 55 NY2d 175 [1982]), "mobilization of

police resources for the exhaustive study of the risk of terrorist attack, the policy-based planning of effective counterterrorist strategy, and the consequent allocation of such resources" (*Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d at 448), participation by a teacher in supervising a playground as part of a school district's overall security system strategy (*see Bonner v City of New York*, 73 NY2d 930 [1989]), or a policy decision with respect to how the issue of homelessness should be addressed (*see Doe v City of New York*, 67 AD3d 854, 856 [2009]). Rather, the gravaman of the complaint is not that the City failed to properly allocate government resources and services to the public at large, which was utilizing the garage, but that it failed in its capacity as a commercial owner of a public parking garage to meet the basic proprietary obligation of providing minimal security for its garage property via lighting, alarms, cameras, and warning signs. These measures are within the normal range of security measures necessary to satisfy the duty of care owed by any landlord or commercial property owner to its tenants or invitees. In the "continuum of responsibility to individuals and society deriving from its governmental and proprietary functions," the lapses complained of encompass a failure to maintain the reasonable security measures expected of any landlord (*Miller v State of New York*, 62 NY2d 506, 511-512 [1984]).

Since the City acted in its proprietary, rather than its governmental, capacity here, we must consider the issue of whether or not the attack upon the decedent was foreseeable in light of a landlord's duty to take minimal precautions to protect its tenants and invitees from foreseeable harm (*see Perez v Real Tuff Piping & Heating, Inc.*, 73 AD3d 882 [2010]). Here, the Supreme Court correctly determined that triable issues of fact existed as to the foreseeability of an attack upon the decedent, thus precluding the award of summary judgment to the City (*see Jacqueline S. v City of New York*, 81 NY2d 288 [1993]; *Guarcello v Rouse SI Shopping Ctr.*, 204 AD2d 685 [1994]).

The City's remaining contentions are without merit. Rivera, J.P., Balkin, Chambers and Cohen, JJ., concur.