Strassburger v Unicarriers Ams. Corps. (2024 NY Slip Op 01742)

Strassburger v Unicarriers Ams. Corps.

2024 NY Slip Op 01742

Decided on March 27, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 27, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
ROBERT J. MILLER
LILLIAN WAN
CARL J. LANDICINO, JJ.

2020-03441
 (Index No. 700579/12)

[*1]Mark Strassburger, respondent, 
v
Unicarriers Americas Corporations, et al., appellants.

Lavin, Cedrone, Graver, Boyd & Disipio, New York, NY (Leland I. Kellner and Michael J. Wozny of counsel), for appellant Unicarriers Americas Corporation.
Fitzpatrick & Hunt, Pagano, Aubert, LLP, New York, NY (Brian W. Colistra and Roberto M. Caruso of counsel), for appellant Port Authority of NY & NJ.
Dell & Dean, PLLC (Mischel & Horn, P.C., New York, NY [Scott T. Horn and Lauren Bryant], of counsel), for respondent.

DECISION & ORDER
In an action to recover damages for personal injuries, the defendants Unicarriers Americas Corporation and Port Authority of NY & NJ separately appeal from an order of the Supreme Court, Queens County (Pam Jackman Brown, J.), dated March 10, 2020. The order denied those defendants' separate motions for summary judgment dismissing the complaint insofar as asserted against each of them.
ORDERED that the order is reversed, on the law, with one bill of costs, and the separate motions of the defendants Unicarriers Americas Corporation and Port Authority of NY & NJ for summary judgment dismissing the complaint insofar as asserted against each of them are granted.
The plaintiff, who was employed by a nonparty cargo handling company, allegedly was injured when he was struck by a forklift traveling in reverse while he was working inside a warehouse at John F. Kennedy Airport. The forklift allegedly did not have a backup alarm or rearview mirrors. The warehouse was leased by the plaintiff's employer from the defendant Port Authority of NY and NJ (hereinafter the Port Authority).
The plaintiff commenced this action against the defendant Unicarriers Americas Corporation (hereinafter Unicarriers), the manufacturer of the forklift, the Port Authority, and another defendant, alleging products liability and negligence. Unicarriers and the Port Authority separately moved for summary judgment dismissing the complaint insofar as asserted against each of them. By order dated March 10, 2020, the Supreme Court denied both motions. Those defendants separately appeal.
The Supreme Court should have granted Unicarriers' motion for summary judgment dismissing the complaint insofar as asserted against it. "A defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use" (LaScala v QVC, 201 AD3d [*2]798, 799 [internal quotation marks omitted]). A manufacturer can be held liable for selling a defectively designed product because the manufacturer "is in the superior position to discover any design defects and alter the design before making the product available to the public" (Voss v Black & Decker Mfg. Co., 59 NY2d 102, 107). With respect to the plaintiff's allegation that the subject forklift was defective insofar as it did not have a backup alarm, Unicarriers established, prima facie, that the forklift had an operational backup alarm when it left the hands of the manufacturer. Documentation from Unicarriers indicated that the forklift was outfitted with a backup alarm, documentation from the Port Authority indicated that the forklift passed an initial inspection done by the Port Authority shortly after it was received by the plaintiff's employer, and the Port Authority agent that performed the inspection testified at her deposition that the forklift would not have passed if it did not have an operational backup alarm. Unicarriers cannot be held liable for failing to install a backup alarm when that safety feature was, in fact, included on the forklift. In opposition, the plaintiff did not raise a triable issue of fact.
With respect to the plaintiff's allegation that the forklift was defective insofar as rearview mirrors were not a standard safety feature, a product shipped without an optional safety feature may be defectively designed because the feature was not standard (see Scarangella v Thomas Built Buses, 93 NY2d 655, 661). "The product is not defective where the evidence and reasonable inferences therefrom show that: (1) the buyer is thoroughly knowledgeable regarding the product and its use and is actually aware that the safety feature is available; (2) there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment; and (3) the buyer is in a position, given the range of uses of the product, to balance the benefits and the risks of not having the safety device in the specifically contemplated circumstances of the buyer's use of the product" (id. at 661). "In such a case, the buyer, not the manufacturer, is in the superior position to make the risk-utility assessment, and a well-considered decision by the buyer to dispense with the optional safety equipment will excuse the manufacturer from liability" (id.).
Here, Unicarriers established, prima facie, that the plaintiff's employer was thoroughly knowledgeable about forklifts and knew that mirrors were available, since it maintained more than 100 forklifts in operation in New York, and the brochure for the forklift listed rearview mirrors as an optional feature. Unicarriers also established that the forklift was not unreasonably dangerous without backup mirrors and that the plaintiff's employer was in the best position to balance the benefits and the risks of not having mirrors on the forklift (see Cordani v Thompson & Johnson Equip. Co., Inc., 16 AD3d 1002, 1004; Campos v Crown Equipment Corp., 35 Fed Appx 31, 33 [2d Cir]; DiMaria v Komatsu Forklift U.S.A., Inc., 2003 US Dist LEXIS 10550, *8 [ED NY, CV02589(RJD)]; see also Scarangella v Thomas Built Buses, 93 NY2d at 662). In opposition, the plaintiff failed to raise a triable issue of fact. Accordingly, the Supreme Court should have granted Unicarriers' motion for summary judgment dismissing the complaint insofar as asserted against it.
The Supreme Court also should have granted the Port Authority's motion for summary judgment dismissing the complaint insofar as asserted against it. The "'common-law doctrine of governmental immunity . . . shield[s] public entities from liability for discretionary actions taken during the performance of governmental functions'" (Santaiti v Town of Ramapo, 162 AD3d 921, 928, quoting Valdez v City of New York, 18 NY3d 69, 75-76). "Where the public entity serves a dual proprietary and governmental role, the analysis involves determining where, along the spectrum of proprietary and governmental functions, the defendant's alleged negligence falls" (Doe v City of New York, 67 AD3d 854, 856). "At one end of the spectrum are purely governmental functions undertaken for the protection and safety of the public," such as "the exercise of police and fire powers" (id. at 856 [internal quotation marks omitted]). "At the other end of the spectrum lie proprietary functions in which governmental activities essentially substitute for, or supplement, traditionally private enterprises," such as "the exercise of maintenance and repair powers traditionally performed by private entities, such as a landlord" (id. [internal quotation marks omitted]). "[I]n light of the fact that the varied functions of a governmental entity can be interspersed with both governmental and proprietary elements, the determination of the primary capacity under which a governmental agency was acting turns solely on the [specific] acts or omissions claimed to have caused the injury" (Matter of World Trade Ctr. Bombing Litig., 17 NY3d 428, 447).
Here, the Port Authority established, prima facie, that its alleged failure to properly inspect the forklift and its issuance of a Port Authority license plate were governmental functions. Contrary to the plaintiff's contention, the forklift inspections performed by the Port Authority and the issuance of the license plate were an exercise of the Port Authority's police power for the protection and safety of the public rather than any authority conferred by a landlord-tenant relationship (see Metz v State of New York, 20 NY3d 175, 179-180; Matter of World Trade Ctr. Bombing Litig., 17 NY3d at 447). The actions of the Port Authority did not create a special duty toward the plaintiff because the inspections were designed to protect public safety rather than the safety of particular individuals (see Metz v State of New York, 20 NY3d at 180; Worth Distribs. v Latham, 59 NY2d 231, 237). In opposition, the plaintiff failed to raise a triable issue of fact. Accordingly, the Supreme Court should have granted the Port Authority's motion for summary judgment dismissing the complaint insofar as asserted against it.
The Port Authority's remaining contention need not be reached in light of our determination.
IANNACCI, J.P., MILLER, WAN and LANDICINO, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court